# IN THE SUPREME COURT OF TEXAS

═══════════
No. 14-0732
═══════════

MICHAEL MCINTYRE AND LAURA MCINTYRE, INDIVIDUALLY AND ON BEHALF OF
THEIR CHILDREN, K.M., L.M., C.M., M.M., AND L.M., PETITIONERS,

v.

EL PASO INDEPENDENT SCHOOL DISTRICT, DR. LORENZO GARCIA, AND MARK
MENDOZA, RESPONDENTS

═══════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE EIGHTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════════

**Argued November 2, 2015**

JUSTICE DEVINE delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE WILLETT, JUSTICE GUZMAN, JUSTICE LEHRMANN, and JUSTICE BOYD joined.

JUSTICE GREEN filed a dissenting opinion, in which JUSTICE JOHNSON and JUSTICE BROWN joined.

The Texas Education Code permits appeals to the Texas Commissioner of Education by persons "aggrieved by" either "the school laws of this state" or "actions or decisions of any school district board of trustees that violate [] the school laws of this state." TEX. EDUC. CODE § 7.057(a). It does not permit, much less require, administrative appeals when a person is allegedly aggrieved by violations of laws other than the state's school laws, such as our state and federal constitutions. Yet the court of appeals expected the petitioners "to exhaust their administrative remedies" for their

state constitutional claims. *See* 457 S.W.3d 475, 487–90 (Tex. App.—El Paso 2014). The trouble is they have none. Whether their constitutional rights were violated remains to be decided, but it is a question the courts—not the Commissioner—must decide. We accordingly reverse the court of appeals' judgment insofar as it dismissed the petitioners' claims for failure to exhaust administrative remedies. However, we affirm the court of appeals' judgment dismissing certain claims based on qualified immunity.

I

In 2007, Michael and Laura McIntyre, along with three of their children, were criminally charged with contributing to truancy and failure to attend school, respectively.[1] The McIntyres claimed the children were exempt from Texas' compulsory attendance laws because they were homeschooled. *See* TEX. EDUC. CODE § 25.086(a)(1) (exempting children who attend private schools from compulsory school attendance); *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 443–44 (Tex. 1994) (holding that bona-fide homeschools are "private schools" within the meaning of the exemption). The McIntyres had refused to sign a homeschool verification form provided by El Paso Independent School District. According to the McIntyres, the form committed them to using curriculum approved by the Texas Education Agency. The District disputes the McIntyres' interpretation.

---

[1] The statute criminalizing the failure to attend school has since been repealed. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, sec. 25.094, 1995 Tex. Gen. Laws 2207, 2294 (amended 1997, 2001, 2003, 2005, 2011), *repealed by* Act of May 30, 2015, 84th Leg., R.S., ch. 935, § 41(2), 2015 Tex. Gen. Laws 3224, 3255. The statute criminalizing contributing to truancy has been amended but remains in effect. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, sec. 25.093, 1995 Tex. Gen. Laws 2207, 2293 (amended 1997, 1999, 2001, 2003, 2011, 2015) (current version at TEX. EDUC. CODE § 25.093).

The McIntyres assert that after the District's attendance officer filed criminal charges against them, he admitted in a phone call that they were "not breaking a law at this time." This admission, they contend, is corroborated by the criminal complaints the officer filed against them. In the space reserved for the officer to list the days of school that children have missed, the complaint instead alleged the McIntyres had "not met [the] homeschool verification requirements." The McIntyres thus assert the charges resulted from a "failure to provide documentation," not criminal conduct. The District, however, insists additional information substantiated concerns that the McIntyre children were not being educated.

The McIntyres sued the District and its attendance officer (among others), alleging they violated the McIntyres' constitutional rights by prosecuting the McIntyres for a crime they knew the McIntyres did not commit, and by using the charges to force the McIntyres to cooperate with their demands. The McIntyres alleged that their rights to due process, equal protection, and free exercise of religion under both the Texas Constitution and United States Constitution were infringed, along with their right to privacy under the Texas Constitution. The McIntyres sought various forms of relief, including declaratory and injunctive relief, as well as damages under section 1983 of Title 42 of the United States Code.

The District and its attendance officer filed pleas to the jurisdiction, special exceptions, and motions to dismiss, and the attendance officer moved for summary judgment. Among other things, the District argued the McIntyres failed to exhaust administrative remedies, and the attendance officer invoked qualified immunity. The trial court denied these pleas, exceptions, and motions, and the District and its attendance officer filed an interlocutory appeal. *See* TEX. CIV. PRAC. & REM.

3

CODE § 51.014(a)(5), (8) (authorizing certain interlocutory appeals). In the court of appeals, the District urged the McIntyres must exhaust administrative remedies as for their *state-law* claims only.

The court of appeals agreed, dismissing the McIntyre's state-law claims against the District. 457 S.W.3d at 490. It also dismissed the state-law claims against the District's attendance officer based on the election-of-remedies provision in section 101.106 of the Texas Civil Practice and Remedies Code, and dismissed the federal-law claims against the attendance officer based on qualified immunity. *Id.* at 492, 499. The McIntyres petitioned for review from this Court, challenging the court of appeals' judgment on qualified immunity and exhaustion of remedies.

II

This is an interlocutory appeal with special jurisdictional considerations. The court of appeals' decision in an interlocutory appeal is generally final. TEX. GOV'T CODE § 22.225(b)(3). There are exceptions, however, such as when "one of the courts of appeals holds differently from a prior decision of another court of appeals or of the supreme court." *Id.* § 22.225(c); *see id.* § 22.001(a)(2). Courts hold differently from each other "when there is inconsistency in their respective decisions that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants." *Id.* § 22.225(e).

This is such a case. The court of appeals held the Texas Education Code required the McIntyres to appeal their state-law claims to the Commissioner of Education merely because they "involve" the school laws of Texas. *See* 457 S.W.3d at 486. Other courts of appeals have held that the Education Code's appeal provision is more limited, recognizing that the statute "has no general appeal clause for persons aggrieved by school board actions." *Jones v. Clarksville Indep. Sch. Dist.*,

4

46 S.W.3d 467, 474 (Tex. App.—Texarkana 2001, no pet.); *see also Austin Indep. Sch. Dist. v. Lowery*, 212 S.W.3d 827, 832 (Tex. App.—Austin 2006, pet. denied) (describing statutory changes limiting the Commissioner's jurisdiction). The Commissioner's authority over school disputes should be clarified, and we have jurisdiction.

III

The Legislature has granted the Texas Commissioner of Education exclusive authority to resolve certain disputes. TEX. EDUC. CODE § 7.057(a); *see Clint Indep. Sch. Dist. v. Marquez*, __ S.W.3d __, __ (Tex. 2016). Where the Legislature grants the Commissioner authority to resolve a dispute, parties to such disputes must seek relief from the Commissioner through an administrative appeal before resorting to the courts. *See Clint Indep. Sch. Dist.*, __ S.W.3d at __. Because exhaustion is only required for "complaints that the Legislature has authorized the Commissioner to resolve," we turn first to the text of the statute. *See id.* (citing *Warren v. Sanger Indep. Sch. Dist.*, 288 S.W. 159, 160 (Tex. 1926)).

A

The exhaustion statute is not all-encompassing. With a few narrow exceptions not applicable here,

> a person may appeal in writing to the commissioner if the person is aggrieved by:
> (1)  the school laws of this state; or
> (2)  actions or decisions of any school district board of trustees that violate:
>   (A)  the school laws of this state; or
>   (B)  a provision of a written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee.

TEX. EDUC. CODE § 7.057(a); *see id.* § 7.057(e) (listing statutory exceptions).[2] The "school laws of

this state" consist of Titles 1 and 2 of the Education Code and the administrative rules adopted under

them. *Id.* § 7.057(f)(2). In short, aside from employment-contract disputes, the Education Code

limits administrative appeals to cases where a person is aggrieved by Titles 1 or 2 of the Education

Code or a school board's violation of them.

At times, disputes arising under other laws depend on violations of the school laws. In these

disputes, the Commissioner, not a court, is required to make the initial determination that a school

board violated the school laws. Such was the case in *Clint Independent School District v. Marquez*,

where parents argued a school district "defie[d] the Constitution's mandates *by violating the

requirements of the Education Code*." __ S.W.3d at __. The Court agreed the constitutional

provisions were not "school laws of the state," but still required exhaustion because the

constitutional claims were "ancillary to and supportive of a complaint about the board's . . .

application of school law." *Id.* at __, __ (quoting *Jones*, 46 S.W.3d at 474).

In other words, when claims are predicated on a matter within the Commissioner's exclusive

jurisdiction, exhaustion is required. But if claims do not challenge the school laws themselves,[3] and

---

[2] In 2009, the Legislature amended the statute to add that "[a] person is not required to appeal to the commissioner before pursuing a remedy under a law outside of Title 1 or [Title 2 of the Education Code] to which Title 1 or [Title 2] makes reference or with which Title 1 or [Title 2] requires compliance." Act of May 23, 2009, 81st Leg., R.S., ch. 1111, § 1, 2009 Tex. Gen. Laws 3054 (codified at TEX. EDUC. CODE § 7.057(a-1)). The parties do not address this provision.

[3] We do not suggest, as the dissent contends we do, *post* at __ (Green, J., dissenting), that a person is only aggrieved by the school laws when she raises a constitutional challenge. The school laws include both statutes and administrative regulations, TEX. EDUC. CODE § 7.057(f)(2), and parties may be aggrieved when other statutory provisions are violated by the school laws. For example, if a person challenges an administrative regulation, such a challenge would normally be subject to administrative appeal.

6

neither assert nor depend on violations of the school laws or an employment contract, then exhaustion is not required.

That the Legislature fully intended these limits to administrative appeals is confirmed by the history of the exhaustion statute. When the Legislature created the office of state superintendent of public instruction in 1884, it broadly charged the superintendent with "hear[ing] and determin[ing] *all appeals* from the rulings and decisions of subordinate school officers."[4] This led the Court to hold in 1926 that "resort to the school authorities must first be made before the courts will be authorized to hear any complaint as to a matter properly belonging to the administration of the school laws." *Warren*, 288 S.W. at 160; *see Nance v. Johnson*, 19 S.W. 559, 559 (Tex. 1892).

When the Legislature replaced the state superintendent of public instruction with the Commissioner of Education in 1949, it again created a broad administrative appeal process:

> Parties having any matter of dispute among them arising under provisions of the school laws of Texas, or any person or parties aggrieved by the actions or decisions of any Board of Trustees or Board of Education, may appeal in writing to the Commissioner of Education . . . .[5]

The Legislature similarly vested the Commissioner with extensive authority over school disputes under the Education Code, which it adopted in 1969:

---

[4] Act of Feb. 4, 1884, 18th Leg., 1st C.S., ch. 25, § 8, sec. 12–13, 1884 Tex. Gen. Laws 38, 41, *reprinted in* 9 H.P.N. Gammel, *The Laws of Texas 1822–1897*, at 570, 573 (Austin, Gammel Book Co. 1898) (emphasis added). The Legislature re-enacted this provision as part of its 1893 and 1905 statutory reforms to the public school system. Act of 1905, 29th Leg., R.S., ch. 124, § 25, 1905 Tex. Gen. Laws 263, 271; Act approved May 20, 1893, 23rd Leg., R.S., ch. 122, § 21, 1893 Tex. Gen. Laws 182, 187, *reprinted in* 10 H.P.N. Gammel, *The Laws of Texas 1822–1897*, at 612, 617 (Austin, Gammel Book Co. 1898).

[5] Act of May 3, 1949, 51st Leg., R.S., ch. 299, art. V, sec. 1, art. VII, sec. 1, 1949 Tex. Gen. Laws 537, 543, 545, *repealed by* Act of May 31, 1969, 61st Leg., R.S., ch. 889, § 2, 1969 Tex. Gen. Laws 2735, 3024.

Persons having any matter of dispute among them arising under the school laws of Texas or any person aggrieved by the school laws of Texas or by actions or decisions of any board of trustees or board of education may appeal in writing to the commissioner of education . . . .[6]

That changed in 1995, when the Legislature reduced the Commissioner's authority to hear disputes.[7] As one court of appeals explained, before "1995, the commissioner had jurisdiction over appeals not only of persons aggrieved by 'the school laws of Texas,' or trustee actions, but 'any matter of dispute . . . arising under the school laws of Texas.'" *Lowery*, 212 S.W.3d at 832. But since 1995, the statute no longer has a "general appeal clause for persons aggrieved by school board actions." *Jones*, 46 S.W.3d at 474.

No longer is there a "direct administrative remedy for claims that a school board took action that violated the constitutional rights (either state or federal) of the complaining party, because those are not part of the school laws of the state." *Id.* Administrative appeals are only permitted when a person is aggrieved by the school laws, a school board's violation of the school laws, or its violation of a written employment contract. TEX. EDUC. CODE § 7.057(a). In all other cases, a person may resort directly to the courts.

---

[6] Act of June 2, 1969, 61st Leg., R.S., ch. 889, § 1, sec. 11.13(a), 1969 Tex. Gen. Laws 2735, 2757, *repealed by* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 58(a)(1), 1995 Tex. Gen. Laws 2207, 2498.

[7] Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, sec. 7.057(a), 1995 Tex. Gen. Laws 2207, 2215 (codified at TEX. EDUC. CODE § 7.057(a)); *see Clint Indep. Sch. Dist.*, __ S.W.3d at __ (noting that the current statute limited the Commissioner's authority); *Larsen v. Santa Fe Indep. Sch. Dist.*, 296 S.W.3d 118, 126 n.10 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("The Texas Education Code was amended in 1995 to narrow the range of grievances over which the Commissioner of Education retains jurisdiction.").

B

The court of appeals held the McIntyres must exhaust administrative remedies because their state-law claims "involve" the school laws and no exception to exhaustion applies. 457 S.W.3d at 486–90. The McIntyres' primary response is that, as homeschoolers, they are exempt from exhaustion because the Education Code applies only to "educational institutions supported in whole or in part by state tax funds." TEX. EDUC. CODE § 1.001(a). Both positions overlook the text of the statute.

Students attending a bona-fide homeschool are not exempt from the Education Code's exhaustion requirement merely because they are exempt from Texas' compulsory attendance laws. The Education Code requires any "person"—not just public school students and their parents—to exhaust administrative remedies when they are aggrieved by the school laws or a school board's violation of them. *Id.* § 7.057(a). Simply put, whether a claimant must exhaust administrative remedies depends on the nature of the claims, not the identity of the claimant. Accordingly, the McIntyres cannot avoid exhaustion merely by identifying themselves as homeschoolers.

Nonetheless, the mere fact that the McIntyres' claims "involve" the school laws does not mean they must exhaust administrative remedies. Rather, for administrative remedies to be available, they must be aggrieved by either (1) the school laws themselves or (2) a school board's violation of the school laws. *Id.* The McIntyres meet neither condition.

Though the McIntyres' claims relate to the Education Code, the McIntyres are not aggrieved by the school laws. The school laws make attendance at public schools compulsory but exempt certain children (such as those attending private school) from attending. TEX. EDUC. CODE

9

§§ 25.085–.086. They also make it a crime for a "parent with criminal negligence" to "fail[] to require the child to attend school as required by law," and the child is absent a certain number of days. *Id.* § 25.093. Further, an attendance officer's duties under the school laws include investigating violations and enforcing school attendance by (among other things) "filing a complaint in a county, justice, or municipal court against a parent" who criminally contributes to a child's failure to attend school. *Id.* § 25.091(b).

Clearly, the McIntyres' grievance is not with the compulsory attendance law—they claim homeschoolers like them are exempt from attendance. Neither is their grievance with the attendance officer's authority to investigate or even file criminal charges against a parent who contributes to truancy. This mere grant of authority did not abridge the McIntyres' rights or otherwise aggrieve them. Instead, the McIntyres' grievance is with the District's and its attendance officer's alleged decision to file charges merely because their "homeschool verification requirements" were not met. The McIntyres claim that the District and its attendance officer unconstitutionally investigated them and filed criminal complaints against them. They do not claim to be aggrieved by the school laws.

Neither are the McIntyres aggrieved by a violation of the school laws—they claim the District violated their rights under the Texas Constitution, not the school laws. For example, they claim that the criminal charges for allegedly failing to meet the "verification requirements" deprived them of due process because it was the District's burden to prove the McIntyres did not offer a bona-fide education, not the McIntyres' burden to prove they did provide such an education. The school laws neither establish the parties' burden of proof nor place significant boundaries on what the District may do while investigating alleged truancy. It is not the school laws, but the constitution, that the

10

McIntyres assert the District violated by charging them with a crime the District knew they did not commit.

The McIntyres' requested declarations confirm that their grievance is not with the Education Code or the District's violation of it. The McIntyres requested various declarations, including that:

- *they were innocent of the criminal charges*. This requires a determination that the *McIntyres* violated the school laws, not the *District*.

- *they could direct their children's education "free from fabricated civil/criminal charges."* This requires a determination that the District fabricated charges limiting the right to homeschool. The Education Code does not prohibit the fabrication of charges—other law does.

- *the District's prosecution policy is unlawful*. This requires a determination that the District could not prosecute the McIntyres for simply refusing to provide information about their curriculum. The Education Code does not decide whether a person may be charged for refusing to provide evidence of innocence.

- *the District "cannot compel [Texas Education Agency] curriculum compliance."* This requires a determination that the McIntyres' privacy rights, among others, tie the District's hands. It does not depend on a violation of the Education Code.

- *the District and its attendance officer cannot "use the threat of prosecution and/or the maintenance of criminal charges to try to obtain information . . . to which they are not entitled."* This requires determining that the District violated other law by

11

coercing the McIntyres to provide information to which the Education Code did *not* entitle it.

Although these declarations may relate to the school laws, they neither challenge the school laws nor assert the District violated them. In other words, the Commissioner has no jurisdiction over the McIntyres' claims, and the McIntyres have no administrative remedies to exhaust.

C

The dissent asserts that we construe the exhaustion statute too narrowly. According to the dissent, exhaustion is required not only when a person's "legal rights have been invaded, infringed upon, or adversely affected by the school laws themselves," but also when they have been infringed by "acts or conduct pursuant to the school laws of the state." *Post* at __. The District and its employees investigated the McIntyres and filed charges pursuant to the school laws, so exhaustion is required, the dissent contends.

But the Legislature intended the Commissioner of Education's authority to be more limited. Employment-contract disputes aside, exhaustion is only required when a person is aggrieved by the school laws or a district's violation of them. TEX. EDUC. CODE § 7.057(a). To this clear Legislative mandate, the dissent would add its own, requiring exhaustion not only for grievances with the school laws or actions *violating* them, but also for actions taken *pursuant* to them. If the Legislature meant this, it would have said it.

The dissent urges that plaintiffs cannot creatively plead around exhaustion by guising claims truly subject to the Commissioner's review as constitutional claims. True, but neither may school districts avoid the courts by conflating all grievances with their actions as grievances with the school

12

laws themselves. Yet this is what the dissent's approach would allow, mandating exhaustion for the McIntyres and countless other parents or students aggrieved not by the school laws but by a school district's actions.

Consider, for example, if a student alleged that school security personnel unreasonably searched her. *See Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009) (confirming that the Fourth Amendment applies in school settings). Though the Education Code authorizes school districts to commission peace officers to protect students' safety, TEX. EDUC. CODE § 37.081(a), (d), the student would be aggrieved by the officer's actions, not by the school laws.

Or perhaps a school district suppressed student speech and engaged in viewpoint discrimination. The Education Code broadly empowers school officials to maintain law and order, *id.* §§ 37.001–.313, but the First Amendment prohibits them from silencing viewpoints that do not materially and substantially interfere with maintaining order at school, *Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503, 512–13 (1969). The student would be aggrieved by the school district's violation of the First Amendment, not by the Education Code's authorization to maintain order.

So it is here. The McIntyres' grievance is not with the school laws, but with the District's alleged violation of their constitutional rights. Exhaustion is not required.

The dissent also argues the McIntyres must exhaust administrative remedies because their claims implicitly allege a violation of the school laws. The dissent asserts the McIntyres allege the District and its attendance officer acted outside the scope of their authority, which is a violation of the school laws. But the McIntyres assert that the Texas Constitution, not the school laws, limited their authority and prohibited their actions. The McIntyres' claims are not predicated on a violation

13

of the school laws, and their constitutional claims may be reached without deciding whether the District violated the school laws.

Indeed, what if a school board required school attendance officers—acting "pursuant to" their investigatory duties under the school laws—to take actions violating a parent's Fourth Amendment right against unreasonable searches and seizures? The parent's claim that the school board exceeded its authority would not assert a violation of the school laws, but a violation of the United States Constitution. Exhaustion would not be required. The same holds true for the McIntyres.

IV

The McIntyres made several claims against the District's attendance officer under section 1983 of Title 42 of the United States Code, but the court of appeals held qualified immunity shielded him from personal liability. *See* 457 S.W.3d at 496–99. Here, the McIntyres challenge only the officer's "entitlement to qualified immunity on the substantive due process claim," arguing he violated their clearly established rights under the Fourteenth Amendment by "swear[ing] under oath to the commission of a crime" he knew they did not commit.

Under the doctrine of qualified immunity, "courts may not award damages against a government official in his personal capacity unless 'the official violated a statutory or constitutional right,' and 'the right was "clearly established" at the time of the challenged conduct.'" *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Given the Fifth Circuit's repeated holdings that there is "no Fourteenth Amendment 'liberty interest' or substantive due process right to be free from criminal prosecution unsupported by probable

14

cause,"[8] the McIntyres cannot assert the attendance officer violated a clearly established federal right. Qualified immunity shields the officer from the McIntyres' section 1983 claim.

* * *

The Legislature has not crafted administrative remedies for the McIntyres' claims. Accordingly, the court of appeals' judgment is reversed insofar as it dismissed plaintiffs' claims for failure to exhaust administrative remedies. We affirm the court of appeals' judgment to the extent it dismissed plaintiffs' claims based on qualified immunity. We remand the case to the court of appeals for consideration of the parties' remaining jurisdictional arguments.

_____
John P. Devine
Justice

Opinion Delivered: June 24, 2016

---

[8] *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010) (citing *Albright v. Oliver*, 510 U.S. 266, 270–71 (1994) (plurality op.)); *see also Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (en banc) ("[W]e conclude that no such freestanding constitutional right to be free from malicious prosecution exists."). *But cf. Cole v. Carson*, 802 F.3d 752, 773 (5th Cir. 2015) ("Where police intentionally fabricate evidence and successfully get someone falsely charged with a felony as cover for their colleagues' actions, and the Fourth Amendment is unavailing, there may be a due process violation.").