

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
| EL PASO INDEPENDENT SCHOOL DISTRICT, | § | No. 08-11-00329-CV |
| Appellant, | § | Appeal from |
| v. | § | 327th District Court |
| MICHAEL McINTYRE AND LAURA McINTYRE, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILDREN, K.M., L.M., C.M.M, M.M., AND L.M., | § | of El Paso County, Texas |
|  | § | (TC # 2007-3210) |
|  | § |  |
| Appellees. | § |  |

## **O P I N I O N**

In 2007, the El Paso Independent School District (EPISD) initiated truancy related criminal charges against Michael and Laura McIntyre, and three of their children, under the then existing mandatory school attendance statute. The charges were eventually dropped by the district attorney. Before us today are remnants of a multi-count civil action that the McIntyres originally filed against EPISD, its then superintendent (Dr. Lorenzo Garcia), an administrator (Mark Mendoza), several of the McIntyre's relatives, and other EPISD employees. During the decade-long litigation path, which we describe in more detail below, the superintendent, the administrator, the EPISD employees, the relatives, along with several of the causes of action have fallen by the wayside.

The McIntyres have pending below a 42 U.S.C. § 1983 action that claims EPISD violated their constitutional rights in how its employees inquired about their homeschooling curriculum, and later initiated criminal charges against them. That claim is not the subject of this appeal and awaits our remand, so the parties can litigate it to some conclusion. Before us today is only the question of whether the McIntyres also state a claim for declaratory and injunctive relief that overcomes EPISD's governmental immunity, and the mootness doctrine. We conclude the equitable claims before us should be dismissed.

## BACKGROUND

This case returns to us on remand from the Texas Supreme Court. *McIntyre v. El Paso Indep. Sch. Dist.*, 499 S.W.3d 820 (Tex. 2016). The Supreme Court's opinion, and our earlier opinion, comprehensively set out the facts of the case. *El Paso Indep. Sch. Dist. v. McIntyre*, 457 S.W.3d 475, 480-82 (Tex.App.--El Paso 2014), *aff'd in part, rev'd in part,* 499 S.W.3d 820, 821, 830-31. We repeat only so much of the background as is needed to understand the issues before us.

Since the fall of 2004, Michael and Laura McIntyre have homeschooled their minor children. They initially did so out of an empty space in a motorcycle dealership that Michael and his twin brother, Tracy, ran. Michael, Laura, and Tracy, however, became embroiled in a dispute over the ownership and management of the dealership. Michael and Laura McIntyre allege that other family members, as a pretext to take over the family business, questioned the legitimacy of the McIntyres' homeschooling. In January 2006, which would have been during the time of the dispute, the EPISD received an anonymous complaint that the McIntyres' children were not being educated.[1]

---

[1] The McIntyres contest whether the complaint was truly anonymous. Whether it was anonymous or not is unimportant to our resolution of the remaining issues in this case. Likewise, EPISD has filed a motion to strike several paragraphs

2

Following the complaint, EPISD sent a truant officer to make an initial home visit, and according the McIntyres, confirmed with them that homeschooling was acceptable, and directed the McIntyres where to call to confirm with the EPISD that their children were being appropriately homeschooled. After a series of follow-up calls, they assumed the issue was closed.

In September 2006, the McIntyres' seventeen-year-old daughter, Tori, ran away from home and began living with an aunt and uncle. She was unhappy about not being able to attend school. Her aunt enrolled her in a high school within the EPISD system. Because Tori declined to take any placement tests, and her grade level could not be otherwise confirmed, she was initially put in the 9th grade. In December 2006, Gene and Shirene McIntyre, who are Michael's parents, and grandparents to the five McIntyre children at issue here, met with Mark Mendoza, EPISD's designated attendance officer. They expressed concerns over the previous homeschooling of Tori and the education of their other grandchildren.

EPISD then had a representative from one of its middle schools visit the McIntyre home and inquire about the curriculum used to teach the children. The McIntyres answered the door, but Laura said only that she was tired of being harassed and would call her attorney. Another EPISD employee from an elementary school was also asked to go to the McIntyre home and obtain a signed homeschool verification form. The McIntyres allege below that the form goes beyond the requirements of Texas law and asks parents to commit to the Texas Education Association's approved curriculum. The McIntyres' counsel reviewed the form and advised them not to sign it. The lawyer sent a letter dated January 5, 2007 to EPISD claiming that the children were being homeschooled in a bona fide manner and "in full compliance" with Texas law (that is, utilizing a

---

and footnotes from the McIntyres' brief on remand, and then a separate motion to strike portions of the response that the McIntyres filed to the motion to strike. The challenged references pertain to an EPISD cheating scandal and a newspaper article published after our original opinion. We overrule the motions to strike but conclude that none of the objected to materials are germane to the issues before us.

3

written curriculum including reading, spelling, grammar, math, and good citizenship). Mendoza, however, did not believe the letter resolved the matter because it did not appear to be based on the lawyer's personal knowledge.

In January 2007, EPISD delivered several "Notice of Absences and Request for Conference" forms to the McIntyres. The McIntyres did not respond to the requests for information or agree to a meeting. EPISD through its employees then filed criminal truancy complaints in a justice court against Michael and Laura McIntyre, and three of the McIntyre children. The children were charged with failing to attend school, and the McIntyre parents were charged with criminal negligence in failing to require their children to attend school. The charging instruments state, however, that the McIntyres have "not met home school verification requirement."

Mendoza claims he initiated the charges relying on information provided by the children's grandparents, his confirmation of information regarding Tori's inability to describe her homeschool education, and the refusal of the McIntyres to provide the EPISD with any written assurance regarding the curriculum they were using. After the complaints were filed, the McIntyres' attorney sent a second letter to EPISD personnel. The letter was essentially identical to the first letter, but it also included a threat to file a lawsuit.

The McIntyres entered pleas of not guilty to the truancy charges and requested a separate jury trial for each. They allege that they made several phone calls to resolve the matter with EPISD, but the employees they spoke with were either unfamiliar with the charges or could not identify what paperwork was required to meet the verification requirement. They also allege that they spoke with Mark Mendoza who demanded copies of curriculum and progress reports, and

4

told them that he knew they were not breaking the law.[2]  Conversely, the State's prosecutor, Matt Moore, testified that he would have dismissed the charges if the McIntyres would have signed a letter he prepared that attested that they were educating their children in compliance with the Texas Supreme Court's decision in *Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 443 (Tex. 1994).  He testified that they refused to do so.

In October 2007, prosecutor Moore contacted Tori and asked if she would vouch for the fact that her parents were using a curriculum and providing a bona fide education, but Tori declined to get involved.  Moore decided to dismiss the truancy complaints, and filed a motion to dismiss stating that the State's essential witness (Lori) refused to testify.  The justice court formally dismissed all the charges on December 3, 2007.

### The Lawsuit Below

During the pendency of the criminal charges, Michael and Laura McIntyre, along with five of their children ranging in age from seven to fifteen, filed this civil lawsuit against EPISD, Dr. Lorenzo Garcia (in his official capacity), Mark Mendoza, three other named EPISD employees, and several of their own family members (Gene, Shirene, and Tracy McIntyre).  By the time of their Third Amended Petition--the last live pleading--the three-other named EPISD employees had been dropped from the suit.

The Third Amended Petition asserts six counts, and one unnumbered claim for injunctive relief.  The various claims include:

- Count 1, Declaratory Relief.  The McIntyres seek declaratory relief in part under TEX.CIV.PRAC.&REM.CODE ANN. § 110.005 (West 2011).  The count seeks various declarations, including that the McIntyres were innocent of all the charges made by EPISD, and that Mendoza was acting outside the scope of his authority by filing a criminal charge for a "non-existent crime."

---

[2] That call was recorded; EPISD disputes the McIntyres' characterization of Mendoza's statements.

5

- Count 2, Equal Protection. The McIntyres alleged that they have been treated differently from other families that homeschool, or that send their children to private schools. They allege that EPISD did so by exceeding its legal right to inquire about the curriculum used by the McIntyres and filing charges for a "fabricated crime."

- Count 3, Due Process under the Texas and Federal Constitutions. The McIntyres allege that EPISD's custom and policy is to use the threats of, or actual prosecution, to compel compliance with EPISD demands. In doing so, EPISD reverses the burden of proof on homeschooling families.

- Count 4, Privacy. Here, the McIntyres allege that through "defamatory accusations" of "non-existent crimes" their privacy rights under the Texas Constitution were violated.

- Count 5, Malicious Prosecution. Under this count, the McIntyres sought money damages against the family member defendants under state law and pleaded a claim for malicious prosecution under 42 U.S.C. § 1983 against EPISD and its employee defendants.

- Count 6, Religious Liberty. The McIntyres allege a violation of the Texas Religious Freedom Restoration Act (TRFRA), claiming that EPISD burdened their free exercise of religion.

- Equitable Relief. The McIntyres, pursuant to the Texas Civil Practices and Remedies Code and the Texas Constitution, seek an order from the court "enjoining Defendants from pursuing further the vexatious and/or harassing litigation which has violated Plaintiffs rights under Texas law." Under 42 U.S.C. § 1983, the McIntyres also seek an order "enjoining Defendants from pursuing further the violations of Plaintiffs constitutional rights under color of state law." Without reference to what statute it was sought under, they also seek an injunction precluding EPISD from "interfering with directing the education of their children."

**Proceedings in the Trial Court**

Through various filings, EPISD, Dr. Lorenzo Garcia, and Mark Mendoza sought dismissal based on the McIntyres' failure to exhaust administrative remedies, governmental immunity, and the failure to provide statutory notice of the TRFRA claim. Dr. Garcia and Mark Mendoza additionally sought dismissal of the claims against them based on the election of remedies provision in Section 101.106 of the Texas Civil Practice & Remedies Code, official immunity as

6

to the McIntyres' state law claims, and qualified immunities as to the McIntyres' 28 U.S.C. § 1983 federal claims. The trial court denied the various motions. EPISD, Dr. Lorenzo Garcia, and Mark Mendoza filed an interlocutory appeal of those rulings.

## Parties and Claims Resolves Below

The McIntyres' dispute with their relatives over the business was tried and eventually settled in a different proceeding. *Mr. Yamaha, Inc. v. McIntyre*, 08-11-00295-CV, 2012 WL 225697, at \*1 (Tex.App.--El Paso Jan. 25, 2012, no pet.)(mem. op.).

In the prior appeal before this Court, EPISD urged, and the McIntyres conceded, that the TRFRA claim should be dismissed based on a lack of a statutorily required notice letter. *El Paso Indep. Sch. Dist. v. McIntyre*, 457 S.W.3d at 484.

We also sustained issues in the earlier appeal that resulted in the dismissal with prejudice of the claims "of any nature" against the Dr. Lorenzo Garcia and Mark Mendoza. In part, both sought dismissal under Section 101.106(a) of the Texas Civil Practices and Remedies Code, which requires a plaintiff to make an election--sue either the entity or the employee, but not both. TEX.CIV.PRAC.&REM.CODE ANN. § 101.106(c)(West 2011). We held that because the McIntyres sued both, the state law claims against these individuals must be dismissed. *McIntyre*, 457 S.W.3d at 492. The McIntyres did not appeal that holding and it has become final for this case.[3]

We further disposed of the federal law claims against Mendoza based on qualified immunity. To defeat the qualified immunity defense, a plaintiff must show in part that the state actor violated a right that was "clearly established at the time of the challenged conduct." *Id*. at 493, *citing Ashcroft v. al-Kidd*, 563 U.S.731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011).

---

[3] *See Guitar Holding Co., L.P. v. Hudspeth County Underground Water Conservation Dist. No. 1ex rel.*, 263 S.W.3d 910, 918 (Tex. 2008)(noting that when an appellant abandons in their petition for review an issue decided in the court of appeals, the court of appeals' judgment as to that issue remains in effect). Accordingly, we have dropped Dr. Lorenzo Garcia and Mark Mendoza from the style of this appeal.

We concluded that each of the constitutional claims failed to raise a fact issue with respect to the violation of a clearly established constitutional right. *McIntyre*, 457 S.W.3d at 495-99. The McIntyres appealed that holding to the Texas Supreme Court as to their substantive due process claim. The supreme court affirmed our decision in that respect. *McIntyre*, 499 S.W.3d at 828.

Finally, we held that the balance of the claims before us should be dismissed because the McIntyres had failed to exhaust their administrative remedies within EPISD's system for resolving disputes. *McIntyre*, 457 S.W.3d at 490. The Texas Supreme Court concluded that we erred in that holding. Administrative remedies are available for a person "aggrieved by either (1) the school laws themselves or (2) a school board's violation of the school laws." *McIntyre*, 499 S.W.3d at 826. The McIntyres, however, were not aggrieved by the school laws of Texas, or by the EPISD's attendance officer's authority to investigate or file criminal charges against a parent who contributes to truancy. *Id*. Rather, they were complaining of EPISD and its attendance officer's "alleged decision to file charges merely because their 'homeschool verification requirements' were not met . . . [and they] unconstitutionally investigated them and filed criminal complaints against them." *Id*. The court then remanded for our resolution of the parties' remaining jurisdictional arguments. *Id.* at 828-29.

### The Remaining Issues on Remand

EPISD frames three issues in this remand. In Issue One, it attacks the McIntyres' claim for declaratory judgment because it does not allege that any statute or ordinance is invalid. Consequently, the claim fails to overcome EPISD's governmental immunity. Issue Two attacks the claim for injunctive relief. The issue as stated claims the McIntyres fail to "make a viable claim that they face irreparable injury to vested property rights by virtue of threatened enforcement of an unconstitutional statute" and accordingly fails to overcome EPISD's immunity. As we

explain below, this argument has morphed into a claim that there is a defect in parties. Finally, in Issue Three EPISD contends that because of changes in the law, and changes in the way that it now handles truancy matters, the claims for prospective declaratory and injunctive relief are moot. We address this last issue first.[4]

## MOOTNESS

A case is rendered moot when: (1) it appears that a party seeks to obtain a judgment upon some controversy, when none exists; or (2) a party seeks a judgment upon some matter which cannot have a practical legal effect upon a then existing controversy. *Beltran v. Beltran*, 324 S.W.3d 107, 110 (Tex.App.--El Paso 2010, no pet.). An actual controversy no longer exists between the parties when "the decision of an appellate court would be a mere academic exercise." *Beltran*, 324 S.W.3d at 110, *quoting Hanna v. Godwin*, 876 S.W.2d 454, 457 (Tex.App.--El Paso 1994, no writ). The mootness doctrine implicates our jurisdiction to decide a controversy. *Patterson v. Planned Parenthood of Houston and Southeast Texas, Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)(justiciability doctrines such as ripeness, as well as standing and mootness, lie in the prohibition on advisory opinions, which in turn stem from the separation of powers doctrine set forth in Article 2, Section 1 of the Texas Constitution).

Mootness can arise from events occurring after a case is appealed. *Olson v. Comm'n for Lawyers Discipline,* 901 S.W.2d 520, 522 (Tex.App.--El Paso 1995, no pet)(death of litigant seeking reinstatement of law license mooted appeal). Accordingly, we may take note of events occurring after a case arrives at this Court which affects our jurisdiction. *See* TEX.R.EVID. 201;

---

[4] EPISD raised a mootness challenge in its Response to the Petition for Review at the Texas Supreme Court. We disagree with the McIntyres' contention that the supreme court has already overruled the mootness challenge. Nothing in its opinion suggests that it decided the question, and instead, it remanded the "remaining jurisdictional challenges" back to this Court. *McIntyre*, 499 S.W.3d at 829. Nor did the supreme court necessarily decide the issue. We are not cited to any case law from that court requiring that among the various challenges to a court's jurisdiction, it always decides a mootness challenge first.

9

*Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623-24 (Tex. 2012), *citing* Texas Rule of Evidence 201 and noting that appellate courts may take judicial notice of relevant facts outside record to determine jurisdiction).

In part, the McIntyres seek an injunction against further "vexatious and/or harassing litigation which has violated [the McIntyres'] rights under Texas law." They sought a declaration (1) allowing them to educate their children "free from fabricated civil/criminal charges" and (2) that the "mandatory prosecution policy" of the EPISD is unlawful. By the time of the hearing below, the truancy related charges against both the McIntyre parents and children had been dismissed by the district attorney. Mark Mendoza testified below that EPISD "has no intention of filing this same case against this particular set of parents." On deposition, he was challenged about that statement, and asked "If this conduct was criminal in [2007], why wouldn't it be in [2010]?" Mendoza responded:

> Sir, one of the internal procedures is to review the case with the assistant district attorney. The assistant district attorney has dismissed these charges, and so therefore, filing the same type of charge unless there is some credible evidence that something has changed dramatically in the household, would be moot.

EPISD repeats essentially the same claim in its answer, stating that it has "no intention of instituting any new truancy cases against any of the Plaintiffs, barring any unforeseen significant change in the facts or the law." And by the time this dispute was heard by the trial court, EPISD had already changed its procedures such that a truancy related charge would not be brought without consultation with the district attorney's office. Additionally, while this case has been on appeal, the legislature has changed the way truancy charges would be brought today.

Effective September 1, 2015, the legislature repealed, amended, or added various provisions of the Education Code, Family Code, Government Code, Local Government Code, and Code of Criminal Procedure that fundamentally change the way truancy is handled in Texas. Act

of May 30, 2015, 84th Leg., R.S., ch. 935, 2015 TEX.GEN.LAWS 3224.  As a part of that change, the legislature repealed Section 25.094 of the Education Code, that previously had made the failure to attend school by a person within the compulsory school attendance age a Class C misdemeanor. *Id.* at § 41(2), 2015 TEX.GEN.LAWS at 3255.  That section had served as the basis for the truancy complaints that had been filed in 2007 against the McIntyre children.

The new act deals with truancy in a decidedly different manner.  Truancy filings for students are now exclusively a civil matter handled in specialized truancy courts. *Id*. at § 26, 2015 TEX.GEN.LAWS at 3235 (amending by adding TEX.FAM.CODE § 65.001 et. seq.).  "An adjudication of a child as having engaged in truant conduct is not a conviction of crime. An order of adjudication does not impose any civil disability ordinarily resulting from a conviction . . . ." *Id.* (amending by adding TEX.FAM.CODE ANN. § 65.009 (a)).  A school district may refer a student to a truancy court, but only if it has first unsuccessfully applied statutory "truancy prevention measures." *Id*. at § 8, 2015 TEX.GEN.LAWS at 3227-29 (amending TEX.EDUC.CODE ANN. § 25.091 (a) and (b), and adding § 25.0915).  If there is a referral, a "truant conduct prosecutor" then reviews the facts described in the referral and decides whether to file a petition with the truancy court. *Id.* at § 27, 2015 TEX.GEN.LAWS at 3239 (adding TEX.FAM.CODE ANN. § 65.053).  The truancy court itself has the authority to excuse absences, whether they have been excused by school officials. *Id.* (amending by adding TEX.FAM.CODE ANN. § 65.003(c)).  Though the matter is civil, the State carries the burden to prove truant conduct "beyond a reasonable doubt." *Id.* (amending by adding TEX.FAM.CODE ANN. §§ 65.010, 65.101(f)).

The criminal charge made against Michael and Laura McIntyre still exists but is reclassified from a "Class C" misdemeanor to a misdemeanor "punishable by fine only." *Id*. at § 11, 2015 TEX.GEN.LAWS at 3231 (amending TEX.EDUC.CODE ANN. § 25.093(c)).  Additionally,

11

a school district may now only file a complaint against a parent under that Section "if the school district provides evidence of the parent's criminal negligence." *Id*. at § 13, 2015 s at TEX.GEN.LAWS 3231-32 (amending TEX.EDUC.CODE ANN. § 25.0951(b)). The court retains the discretion to dispose of the charge; it "may dismiss a charge against" a parent "if the court finds that a dismissal would be in the interest of justice" because "sufficient justification exists for the failure to attend school." *Id.* at § 3, 2015 TEX.GEN.LAWS at 3225 (amending TEX.CODE CRIM.PROC.ANN. § 45.0531(b)).

For most Texas counties, including El Paso, school districts were required to adopt uniform truancy policy through a committee with representation from the county judge, the mayor of the largest municipality in the county, the juvenile courts, the municipal courts, the justice courts, the school districts and charter schools, the district attorney's office, and the public. *Id*. at § 10, 2015 TEX.GEN.LAWS at 3230 (amending TEX. EDUC. CODE ANN. § 25.0916). Such a new plan was adopted in El Paso County in 2015.[5]

Given the underlying facts, and the intervening change in the law, we agree that the injunctive relief seeking a restraint on filing new criminal charges is moot, as are those declarations specific to the filing of criminal charges. Not only have the procedures changed, but the standards for filing charges have changed. We layer on to that change in the law four other considerations: (1) much of EPISD's angst was the McIntyres' refusal to identify, or acknowledge use of a curriculum, but the existence and use of a curriculum was confirmed by Laura McIntyre through an affidavit she filed in this litigation; (2) three of the McIntyre children have aged out from the ambit of the mandatory attendance policy; (3) the familial dispute that led to the "anonymous" and

---

[5] El Paso County, Texas Truancy Prevention Plan" available https://tx02201707.schoolwires.net/cms/lib/TX02201707/Centricity/Domain/165/Truancy_Prevention_Plan-_with_Signatures.pdf  (last visited January 29, 2018).

other complaints have been resolved; and (4) EPISD's disclaimer of an intent to pursue future criminal charges.

The parties spar over whether this last fact--EPISD's voluntary disclaimer of any intent to pursue the matter--is truly dispositive to the mootness inquiry.[6]  "A defendant's cessation of challenged conduct does not, in itself, deprive a court of the power to hear or determine claims for prospective relief."  *Matthews, on behalf of M.M. v. Kountze Indep. Sch. Dist.*, 484 S.W.3d 416, 418 (Tex. 2016).  Rather, a dispute is only mooted by subsequent events that make "absolutely clear that the [challenged conduct] could not reasonably be expected to recur."  *Id*., *quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693, 708, 145 L.Ed.2d 610 (2000).  The burden of persuasion in this regard is a "heavy" one.  *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979).

The McIntyres stress that EPISD's disclaimer was subject to a proviso for "unforeseen significant change in the facts or the law."  Equivocation by a governmental entity in changing a policy or practice cuts against the absolute clarity required in a mootness challenge.  In *Matthews*, for instance, the Texas Supreme Court found a school district's post-lawsuit policy change insufficient to moot a controversy.  The case arose over a school district that bared religious messages on student prepared banners used at football games.  *Matthews*, 484 S.W.3d at 417. Despite the school district's claim that it would no longer prohibit the signs based on their religious content, the school district expressly retained "the right to restrict the content of school banners." Conversely, in *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd sub*

---

[6] The McIntyres also invoke the "capable of repetition, yet evading review" exception to the mootness doctrine.  One element of that exception asks whether there is a reasonable expectation that the same complaining party would be subjected to the same action again.  *See City of Cleveland v. Keep Cleveland Safe*, 500 S.W.3d 438, 453-55 (Tex.App.--Beaumont 2016, no pet.).  In that sense, the exception folds back into the merits of the mootness issue and turns on whether EPISD would ever refile the criminal charges it previously pursued.

13

*nom. Sossamon v. Texas*, 563 U.S. 277 (2011), the Fifth Circuit dismissed part of a prisoner's claim over access to the prison sanctuary based on the affidavit of a prison administrator attesting that the contested prison policy had been changed to allow exactly what the plaintiff demanded. Nonetheless, the disclaimer in this case, joined with the fundamental way in which truancy is now handled, convinces us that the prospect of future criminal charges is speculative at best, and the relief in that regard is moot.

The McIntyres also respond to the mootness challenge, however, by noting that they seek an injunction going beyond just the initiation of criminal charges. They also fear that EPISD will continue to seek improper verification of homeschooling curriculum. And even with the changes in the truancy law, school districts still have truancy enforcement officers who are empowered to investigate truancy matters, including the authority to make home visits. *See* TEX.EDUC.CODE ANN. § 25.091(a)(West Supp. 2017). Without addressing the merits of whether EPISD would use that authority to make future curriculum inquiries, much less improper ones, we conclude the change in the truancy laws do not moot this aspect of their claim. *See Heckman v. Williamson County*, 369 S.W.3d 137, 167 (Tex. 2012)(changes in policy did not automatically moot controversy when gist of claims was the defendants' actions and behavior, and not its written policies). Nor do EPISD's pleadings or Mendoza's statements make "absolutely clear" that EPISD would not make further inquiries into curriculum matters. EPISD's pleadings state it has no intention of "instituting new truancy *cases*" or "*criminal proceedings*" against the McIntyres [Emphasis added]. Mendoza's testimony focuses only on the criminal charges. Neither disclaimer addresses inquiries short of criminal charges. EPISD does not concede that any improper inquiries were made, nor does it suggest it has altered its policy or practice in confirming whether a homeschool is providing a bona fide education or not. *See Matthews*, 484 S.W.3d at 419 (in

14

rejecting mootness challenge, noting as important factor the absence of admission of past improper conduct by governmental entity).

Accordingly, we sustain the mootness challenge as it relates to the injunctive and declaratory relief regarding the filing of future criminal charges, but otherwise overrule Issue Three.

## PROSPECTIVE RELIEF AND GOVERNMENTAL IMMUNITY

EPISD's plea to the jurisdiction contends that its governmental immunity bars the courts from entertaining the declaratory and injunctive relief sought in this case.

### Governmental Immunity

Governmental entities, including school districts such as EPISD, are generally immune from suit unless the legislature expressly waives that immunity. *Manbeck v. Austin Indep. Sch. Dist*., 381 S.W.3d 528, 530 (Tex. 2012); *Connally v. Dallas Indep. Sch. Dist.*, 506 S.W.3d 767, 775-76 (Tex.App.--El Paso 2016, no pet.). A governmental unit's immunity implicates a trial court's subject matter jurisdiction. *Engelman Irrigation Dist. v. Shields Brothers, Inc.*, 514 S.W.3d 746, 751 (Tex. 2017). As such, an appellate court has an obligation to address a governmental immunity argument even when raised for the first time on appeal. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 91 (Tex. 2012)(argument raised for first time to court of appeals); *Manbeck*, 381 S.W.3d at 530 (immunity argument raised for first time before Texas Supreme Court).

"Where a government entity challenges jurisdiction based on immunity, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015)(citations omitted). A governmental entity may challenge that allegation of a valid waiver through a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004);

15

*Univ. of Texas at El Paso v. Ochoa*, 410 S.W.3d 327, 330 (Tex.App.--El Paso 2013, pet. denied). The plea might attack the face of the pleading, but it may also include evidence which thereby places into issue the existence of a jurisdictional fact. *Miranda*, 133 S.W.3d at 226-27; *College of the Mainland v. Glover*, 436 S.W.3d 384, 391 (Tex.App.--Houston [14th Dist.] 2014, pet. denied). In this case, both parties presented evidence at the hearing on the plea to the jurisdiction.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *Miranda*, 133 S.W.3d at 226. "If there is no question of fact as to the jurisdictional issue, the trial court must rule on the plea to the jurisdiction as a matter of law." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009). "If, however, the jurisdictional evidence creates a fact question, then the trial court cannot grant the plea to the jurisdiction, and the issue must be resolved by the fact finder." *Id.* "This standard mirrors our review of summary judgments" where the reviewing court takes as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in the non-movant's favor. *Id.* We review the issue of whether a trial court has subject matter jurisdiction *de novo*. *Miranda*, 133 S.W.3d at 226-27; *State ex rel. Dep't of Highways and Public Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).

**The Injunctive Relief Claim**

The McIntyres assert a state law claim for injunctive relief, seeking two specific orders:

105. [T]he issuance of an order enjoining Defendants from pursuing further the vexatious and/or harassing litigation which has violated [the McIntyres'] rights under Texas law.

107. [A] permanent injunction against defendants enjoining them from interfering with directing the education of their children.

As we previously decided, the claim stated in paragraph 105 is moot. EPISD contends the other claim does not overcome its governmental immunity.

16

Governmental immunity is waived when a plaintiff challenges a statute or ordinances' validity. *See Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 77 (Tex. 2015) (sustaining constitutional due process challenges to licensing rules and regulations). Conversely, a governmental entity retains immunity from claims for injunctive relief that are based on allegations that a government official has violated the law or has failed to perform a ministerial act. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372-73 (Tex. 2009). For such a claim, the aggrieved party is not without recourse, but any suit must name the government official as a party. *Patel*, 469 S.W.3d at 76 ("[S]uits complaining of ultra vires actions may not be brought against a governmental unit, but must be brought against the allegedly responsible government actor in his official capacity."); *Heinrich*, 284 S.W.3d at 372-73 ("Nonetheless, as a technical matter, the governmental entities themselves--as opposed to their officers in their official capacity--remain immune from suit."); *Texas Dep't of Ins. v. Reconveyance Services, Inc.*, 306 S.W.3d 256, 258 (Tex. 2010)("We conclude[ ] that suits complaining of *ultra vires* action may not be brought against a governmental unit possessed of sovereign immunity, but must be brought against the allegedly responsible government actor in his official capacity.")

In its opening brief on remand, EPISD cites *Heinrich*, but its primary argument contends that the only "litigation" and "interference" that the McIntyres seek to enjoin are the criminal charges which have by now all been dropped. It adds that a court cannot enjoin the enforcement of a penal statute unless the statute is unconstitutional and there is a threat of irreparable injury to some vested property rights. *See State v. Morales*, 869 S.W.2d 941, 945 (Tex. 1994). Because the McIntyres make no claim that the criminal statute (or any other statute) is unconstitutional, and our prior opinion concluded there was no irreparable injury (at least regarding a prosecution under

17

the former statute), EPISD argued the injunctive relief claim does not overcome EPISD's immunity.

The McIntyres responded by pointing to two cases they read to allow injunctive relief to remedy violations of the Texas Constitution. *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007)(per curiam) and *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995). In its Reply brief, EPISD shifts the focus of its argument to address *City of Elsa* and *Bouillion*. In part, EPISD contends that the most recent decisions from the Texas Supreme Court firmly entrench the rule that equitable relief is available only to challenge the constitutionality of a statute, and the McIntyres are only complaining of the acts of individual employees applying facially valid rules and procedures. And when a party complains of a governmental official's acts in applying a statute which is otherwise constitutional, the claim is against the official in their official capacity.

As the argument has evolved, we agree with the EPISD. The jurisdictional evidence shows that the McIntyres are complaining of the acts of EPISD employees in administering uncontested statutes and court rulings pertaining to truancy and homeschooling. The McIntyres do not claim the mandatory attendance law itself violates any Texas Constitutional provision. Both parties agree with the Texas Supreme Courts' decision in *Texas Educ. Agency v. Leeper* that homeschooled children taught in a bona fide manner from a curriculum designed to meet basic education goals (reading, spelling, grammar, mathematics and good citizenship) comply with the mandatory attendance laws. 893 S.W.2d 432, 443 (Tex. 1994). As the Texas Supreme Court's decision in this case made clear, the McIntyres do not challenge the school laws of the State. Rather, they contend that EPISD employees acted inappropriately by demanding information about their homeschool curriculum, then improperly initiated criminal charges when they would

18

not provide information about that curriculum. These claims would be addressed by injunctions against the EPISD employees in their official capacity, and not against the EPISD.

The McIntyres reliance on *City of Elsa* is unavailing. In that case, after several police officers resigned, they claimed the City disseminated confidential medical information about them to the media, all in violation of state statutes and privacy protections in the Texas Constitution. They sought an injunction to prevent the City "from taking any further action that would jeopardize" their employment and liberty interests. 226 S.W.3d at 391. The intermediate court of appeals concluded that the officers failed to plead a facially valid claim, because plaintiffs pleaded only "mere fear or apprehension of possible injury" in the future. *Id.* The intermediate court remanded the case to allow the officers to replead. But the City filed a petition for review, claiming in part that because the officers named only the City, and not the officials alleged to have committed unauthorized acts, the claim should have been dismissed. *Id.* The supreme court disagreed. It restated language from *Bouillion* that "'suits for injunctive relief' may be maintained against governmental entities to remedy violations of the Texas Constitution." *Id.*, *quoting Bouillion*, 896 S.W.2d at 149. *Bouillion* itself decided that there was no private cause of action for violations of the Texas Constitution. 896 S.W.2d at 149. Rather, a litigant could seek equitable relief to invalidate a statute in conflict with the Texas Constitution. *Id.*

While seemingly helpful to the McIntyres, the Texas Supreme Court reconciled *City of Elsa*, and *Bouillion*, and its more recent cases (*Heinrich,* and *Reconveyance Services*) in *Patel*. While reaffirming *City of Elsa* and *Bouillion*, the court explained its newer rulings:

> In *Heinrich* we decided that sovereign immunity does not prohibit suits brought to require state officials to comply with statutory or constitutional provisions. But, to fall within this 'ultra vires exception,' a suit must allege that a state official acted without legal authority or failed to perform a purely ministerial act, rather than attack the officer's exercise of discretion. The governmental entities themselves remain immune from suit, though, because unlawful acts of officials are not acts of

19

the State.  Thus, we concluded that suits complaining of ultra vires actions may not be brought against a governmental unit, but must be brought against the allegedly responsible government actor in his official capacity.

We reconfirmed the point in *Reconveyance,* where we held that the trial court lacked jurisdiction to hear a suit against the Texas Department of Insurance.  We concluded that the claims were substantively ultra vires claims because the pleadings alleged the Department of Insurance had acted beyond its statutory authority.  That being so, the claims should have been brought against the appropriate state officials in their official capacities.

In this case, the [plaintiffs] did not plead that the Department and Commission officials exceeded the authority granted to them; rather, they challenged the constitutionality of the cosmetology statutes and regulations on which the officials based their actions.

*Patel*, 469 S.W.3d at 76 (pinpoint citations omitted).

Because the McIntyres' claims at their core complain about EPISD employee actions, and not particular rules or statutes, we conclude they cannot proceed against EPISD.  We therefore sustain EPISD's second issue and dismiss the claim for future injunctive relief with prejudice.[7]

**No Viable Declaratory Relief Claim**

In Issue One, EPISD similarly contends that the McIntyres have failed to assert a viable declaratory judgment claim because rather than challenge the validity of a statute or law (for which immunity is waived), they seek declarations of their rights under the law (for which immunity is not waived).  *See Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011); *Heinrich*, 284 S.W.3d at 372-73.  The McIntyres concede this issue.  They do so, however, by agreeing that

_____

[7] We recognize the paradox that the McIntyres initially brought claims against Mark Mendoza and Dr. Lorenzo Garcia in their official capacities.  During the course of this appeal, however, those claims have been dismissed, and the dismissals are now final.  The McIntyres never urged that Mendoza and Garcia should have remained in their official capacity for the limited purpose of the injunctive relief claim, nor have they ever asked that the injunctive relief claim be remanded for them to replead.  *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 91 (Tex. 2012)(remanding case to allow plaintiffs opportunity to replead when they did not have a full and fair opportunity to respond to immunity claim raised first time on appeal); *but see U. Interscholastic League v. S.W. Officials Ass'n, Inc.,* 319 S.W.3d 952, 965 (Tex.App.--Austin 2010, no pet.)("The opportunity to amend pleadings to cure a jurisdictional defect has not been extended to the opportunity to substitute a state-entity defendant with a state actor acting in an official capacity in an ultra vires claim that would otherwise be barred by sovereign immunity.").  Nor did any party raise TEX.R.APP.P. 7.2(a) before or after we issued our prior judgment which dismissed Dr. Garcia and Mark Mendoza from claims of "any nature."

20

"a state law claim for declaratory relief must be against the offending governmental employee rather than the governmental entity" and our prior judgment dismissed Dr. Lorenzo Garza. Consequently, the McIntyres state "[a]s a result, no state law claim for declaratory relief remains." We agree, but note the same conclusion falls with equal force on the McIntyres' state law injunctive relief claim. The plaintiff in *Heinrich* sought both declaratory relief and an injunction, and the court did not distinguish the two in applying its immunity analysis. *Heinrich*, 284 S.W.3d at 369. It required that "Heinrich's claims for prospective relief may be brought only against the appropriate officials in their official capacity" and concluded the claims against the City of El Paso should be dismissed. *Id.* at 377. Likewise, we conclude that Issue Two should be granted and dismiss the state law declaratory relief claims against EPISD.

## CONCLUSION

We dismiss the declaratory and injunctive relief claims pertaining to future criminal prosecution as moot under Issue Three, and otherwise overrule that issue. We sustain Issues One and Two and dismiss the remaining state law declaratory and injunctive relief claims under EPISD's plea to the jurisdiction. The case is remanded to address the remaining 28 U.S.C. § 1983 issues.

September 28, 2018

                    YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.
McClure, C.J., not participating

21