

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00277-CV

———————————————

KENT SCRIBNER AND FORT WORTH INDEPENDENT SCHOOL DISTRICT, Appellants

V.

JENNIFER TREGER, FOR HERSELF AND AS NEXT FRIEND OF M.T. AND T.T.; TODD DANIEL, FOR HIMSELF AND AS NEXT FRIEND OF HIS MINOR CHILDREN; JANE DOE, FOR HERSELF AND AS NEXT FRIEND OF HER MINOR CHILDREN; AND KERRI REHMEYER, FOR HERSELF AND AS NEXT FRIEND OF HER MINOR CHILDREN, Appellees

AND

JASON SMITH, INDIVIDUALLY AND AS NEXT FRIEND OF S.S., Appellant

V.

JENNIFER TREGER, FOR HERSELF AND AS NEXT FRIEND OF M.T. AND T.T.; TODD DANIEL, FOR HIMSELF AND AS NEXT FRIEND OF HIS MINOR CHILDREN; JANE DOE, FOR HERSELF AND AS NEXT FRIEND OF HER MINOR CHILDREN; AND KERRI REHMEYER, FOR HERSELF AND AS NEXT FRIEND OF HER MINOR CHILDREN, Appellees

---

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-327449-21

---

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

This interlocutory appeal involves a policy established by a school district that required all persons on its campuses to wear a face covering and that was put into place in response to the COVID-19 pandemic. The school district established its policy after Governor Abbott had issued his Executive Order GA-38 that prohibited mask mandates by school districts.

Two notices of appeal were filed, and each brings distinct sets of issues. In one appeal, the Appellants are Fort Worth Independent School District and its Superintendent, Kent Scribner; we will refer to these Appellants collectively as the District unless some need requires otherwise. The District was sued by Appellees Jennifer Treger, for herself and as next friend of M.T. and T.T.; Todd Daniel, for himself and as next friend of his minor children; Jane Doe, for herself and as next friend of her minor children; and Kerri Rehmeyer, for herself and as next friend of her minor children (collectively, the Parents). The children of the Parents attend the District's schools. The Parents sued the District to challenge the mask policy that it had instituted, alleging causes of action for a violation of the Texas Open Meetings Act (TOMA), declarations under the Texas Uniform Declaratory Judgments Act (UDJA), and temporary and permanent injunctive relief.

The trial court conducted an evidentiary hearing on the Parents' request for temporary injunctive relief and also received evidence and argument by written

submission. The trial court entered a temporary-injunction order restraining the District from denying "any student or parent access to [District] facilities based on a face covering." The injunction order specifically states that the District policy "was made without authority and is contrary to and in violation of [Governor] Abbott's Executive Order GA-38." The trial court reserved ruling on whether the Parents' TOMA claim warranted injunctive relief. The District also filed a plea to the jurisdiction, which the trial court denied.

The District brings three issues on appeal. Those issues contend that the trial court (1) erred by denying the District's plea to the jurisdiction, (2) abused its discretion by entering a temporary injunction, and (3) erred by entering a temporary injunction that was too broad and vague. Our resolution of this appeal turns on the District's first issue and is as follows:

- We deny the District's jurisdictional challenge to the Parents' TOMA claim and hold that the challenges raised by the District should be resolved not as a jurisdictional issue but on the merits.

- We grant the District's jurisdictional challenge to the Parents' UDJA claim because the Parents have not brought a viable claim under the UDJA. Though other remedies might have provided the Parents with relief, the Parents disavowed that they were bringing an ultra vires claim of the type that might have challenged a governmental official's acts.

4

Further, though the Parents claim that there is a constitutional violation, they failed to specifically plead the nature of the constitutional right being violated. We will remand this matter to the trial court to accord the Parents an opportunity to replead.

- We deny the District's present jurisdictional challenge asserting that the Parents failed to exhaust their administrative remedies before bringing suit against the District.

Because of our outlined resolution of the District's jurisdictional issues and because the injunction was not based on an alleged TOMA violation, we dissolve the temporary-injunction order entered by the trial court. Also, because of our resolution, we do not reach the District's second and third issues attacking the entry of the injunction and its form.

Our resolution also impacts the appeal brought by Appellant Jason Smith, individually and as next friend of S.S. Smith (whom we refer to as Intervenor Smith) intervened in the trial court on behalf of himself and his child, who is a student in the District. Intervenor Smith advocated to uphold the District's mask policy and challenged the Governor's authority to prohibit mask mandates. On appeal, Intervenor Smith raises three issues challenging the entry of the temporary-injunction order regarding (1) whether the District's mask policy is valid and enforceable, (2) whether the trial court erred by permitting the Parents' expert witnesses to testify, and (3) whether the Parents presented legally and factually sufficient evidence to

support a finding of irreparable harm. Because we dissolve the temporary injunction on the basis of the District's jurisdictional challenges, we do not reach the issues raised by Intervenor Smith as such issues are now moot.

## II.  Factual and Procedural Background

On July 29, 2021, the Governor issued Governor's Executive Order GA-38, relying on the authority of the Texas Disaster Act (TDA) of 1975, codified in Chapter 418 of the Texas Government Code. *See* Tex. Gov't Code Ann. §§ 418.001–.307. The Governor's order mandates that "[n]o governmental entity, including a county, city, school district, and public health authority, and no government official may require any person to wear a face covering or to mandate that another person wear a face covering."

On August 10, 2021, the District sent a district-wide email that stated a District policy at odds with GA-38:

> At the August 10th Board of Education meeting Superintendent Kent Scribner announced that, effective immediately, all students, staff[,] and visitors to all Fort Worth ISD indoor facilities will be required to wear facemasks. This will include all staff and students who ride District school buses. The Fort Worth ISD will open to 100% in-person classes on Monday, August 16. Masks will be required for everyone.

Within two days of the distribution of the District's email, the Parents filed suit against the District and the Superintendent. The Parents' petition noted the Governor's prohibition on mask mandates. The petition also challenged the vagueness of the mask policy referenced in the email we have quoted, asserted that its

6

adoption was politically motivated, challenged the need for its adoption, and asserted that mask wearing is detrimental physically and psychologically to children. The petition also claimed that the District's Board had not voted to approve the mask policy and that it appeared that the Superintendent had made the decision to issue it unilaterally. Attached to the petition were various items of evidence, including declarations from the Parents, internal communications of the District regarding a mask policy, and declarations of experts outlining the negative physical and psychological effects of mask wearing by children.

In a preliminary section of their petition introducing their specific causes of action, the Parents noted the Governor's declaration (stating that it had "the force and effect of law"), the provisions of TOMA, and the mandamus relief that the Governor had sought when a court in Dallas County had issued a restraining order that prevented enforcement of the Governor's prohibitions against mask mandates. With respect to their specific cause of action, the Parents alleged that the District had violated TOMA because the District had adopted a mask policy without conducting a Board vote or seeking public input. The Parents sought a declaration that "the District's mask policy is void for illegality and thus unenforceable." Finally, they sought temporary and permanent injunctive relief.

The District filed a combined answer and response to the Parents' request for injunctive relief. The District's response challenged the wisdom of the Governor's prohibition on mask mandates and noted the same restraining order that the Parents

7

had referenced in their petition operated to restrain the Governor state-wide "from enforcing the paragraphs of GA-38 that purport to prevent local school districts from enforcing mask requirements." The District's pleading went on to assert that the Parents could not obtain injunctive relief because (1) their suit was a collateral attack on the Dallas County restraining order; (2) the Parents sought to alter the status quo; (3) the parents could not show a probable right to relief under TOMA; (4) the Parents could not show a probable right to declaratory relief because no matter GA-38, the District had the legal right to impose its mask policy, the TDA did not give the Governor the ability to contravene that power, and his effort to do so was unconstitutional. Finally, the District challenged the Parents' ability to establish irreparable harm.

The trial court issued a temporary restraining order, finding that the District's mask policy "was made without authority and [was] actually an illegal act under [Governor] Abbott's Executive Order GA-38" and "[was] an apparent violation of [TOMA]." The trial court also found that the Parents would suffer irreparable harm if injunctive relief were not granted and that such relief preserved the status quo. The temporary restraining order imposed the following restraint on the District: "[The District] shall not deny any student or parent access to Fort Worth Independent

School District facilities based on a face covering, nor act in derogation of any right enjoyed by a person wearing a face covering."[1]

After the issuance of the restraining order, Intervenor Smith filed his petition in intervention. In essence, the intervention petition took the position that the District's "requirement that students and staff wear masks at school is lawful and enforceable." Intervenor Smith later amended his petition.

The District next filed a plea to the jurisdiction and a brief in opposition to the Parents' temporary-injunction request. The plea reiterated many of the arguments raised in response to the Parents' request for a restraining order. The jurisdictional challenges made in the plea to the jurisdiction that were carried forward to this appeal are that the Parents (1) failed to exhaust their administrative remedies, (2) did not have standing to pursue their declaratory-judgment claim, (3) failed to allege a valid declaratory-judgment claim, and (4) failed to allege a valid TOMA claim. The Parents responded to the plea to the jurisdiction. Most of the arguments that the Parents raised in their response to the plea to the jurisdiction are also raised in their appellate brief, so we will detail those arguments in our analysis.

The trial court then held a hearing on the Parents' application for a temporary injunction. The trial court heard testimony from a number of witnesses who offered the parties' clashing positions on the efficacy of masks in slowing the spread of COVID-19 and the effects that mask wearing has on children. The trial court

---

[1]The trial court later extended the temporary restraining order.

admitted a number of declarations and affidavits submitted by the parties. The trial court was unable to complete the hearing, and the parties submitted a number of affidavits and declarations bearing on their respective positions. The parties also presented written closing arguments addressing whether the trial court should issue a temporary injunction.

While the litigation progressed, so did the District's actions on its mask policy. The same day the trial court conducted the live portion of the temporary-injunction hearing, the District's Board met (on August 26, 2021) and passed a resolution that provided in part as follows:

> 2. Subject to the provisions of Paragraph 3, below, Fort Worth Independent School District staff, students, parents, and all visitors at Fort Worth Independent School District facilities are henceforth required to wear protective facemasks, unless expressly excused from such requirement for medical reasons. A medical exemption request should be accompanied by written documentation from a licensed physician regarding the medical need.
>
> 3. The directives in Paragraph 2 of this Resolution are hereby made subject to any restrictions or judicial orders issued by the court in Cause No[.] 352-327449-21, pending in the 141st District Court of Tarrant County, styled *Treger, et al v Scribner, et al*, which currently has resulted in a court order or court orders [that] may constrain the ability of the Fort Worth Independent School District to implement and/or enforce the directive contained in this Resolution. It is the intent of the Fort Worth Independent School District Board of Trustees that the District Administration vigorously enforce the directives contained in this Resolution to the fullest extent possible, so long as such enforcement does not violate the terms of an enforceable [o]rder in the above-referenced suit, or any other [o]rder issued by a court in the State of Texas [that] has jurisdiction over the Fort Worth Independent School District.

10

In the same time frame as the other filings described above, the Parents filed two amended petitions; the second filed included material inadvertently omitted from the first. The amended petition maintained the same structure of the Parents' causes of actions as the Parents' first petition regarding a TOMA violation, declaratory relief, and injunctive relief but added "new facts" apparently to support a contention that the District's Board had violated TOMA by conducting an improper closed meeting before the Superintendent announced the August 10 mask policy that prompted the Parents' lawsuit. The District sought to strike the corrected petition; the trial court denied that request but noted that it "did not consider the Corrected First Amended Petition in any other rulings made this day."

Based on the filings described above, the trial court denied the District's plea to the jurisdiction and granted the Parents' request for temporary injunctive relief. The injunction order stated that the trial court had granted relief because the trial court had found "that [the District's] face-covering rule as described by [the Parents] was made without authority and is contrary to and in violation of [Governor] Abbott's Executive Order GA-38." The injunction order, however, stated that the trial court did not base its order of injunctive relief on a TOMA violation and reserved "ruling on the requested injunctive relief regarding [the Parents' TOMA] arguments." Continuing, the injunction order concluded that the Parents' children "face[d] irreparable harm, including significant and irreparable damage to their right to a healthful environment while they receive a free and appropriate public education free

of activity sanctioned by the Fort Worth Independent School District which [Governor] Abbott's Executive Order GA-38 specifically prohibits." Noting a recent order from the Texas Supreme Court, the injunction order concluded that the status quo was the state created by the Governor's prohibition of mask mandates in GA-38 and accordingly found that it was acting to preserve that status quo. The injunction order then imposed the following restraint:

> NOW, THEREFORE, good cause appearing, the [c]ourt GRANTS the application, and ORDERS . . . Scribner and the Fort Worth Independent School District . . . and its agents to cease enforcement actions of the face-covering rule described in the Application, pending the adjudication of [the Parents'] claims in the present case, as follows:
>
> [The District] shall not deny any student or parent access to Fort Worth Independent School District facilities based on a face covering, nor act in derogation of any right enjoyed by a person wearing a face covering.
>
> Further, [the District] shall inform its employees of this Temporary Injunction and its contents, giving them notice that violations of this Temporary Injunction are sanctionable.

The District perfected an appeal from the trial court's denial of its plea to the jurisdiction and the order granting the temporary injunction. Intervenor Smith filed a notice of appeal with respect to the temporary-injunction order.

### III. Analysis

**A.  We set forth the standard of review and the procedural process that we utilize when addressing a plea to the jurisdiction.**

"Governmental units, including school districts, are immune from suit unless the [S]tate consents." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770

12

(Tex. 2018). "Because the assertion of sovereign immunity implicates the courts' jurisdiction, immunity is properly raised in a plea to the jurisdiction." *Matzen v. McLane*, No. 20-0523, 2021 WL 5977218, at \*3 (Tex. Dec. 17, 2021).[2] A failure to exhaust administrative remedies may also be raised in a plea to the jurisdiction. *See Watson v. City of Southlake*, 594 S.W.3d 506, 524 (Tex. App.—Fort Worth 2019, pet. denied) (considering the issue of the failure to exhaust administrative remedies, which was raised in a plea to the jurisdiction).

"Where a government entity challenges jurisdiction on the basis of immunity, 'the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity.'" *Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 927 (Tex. 2015) (quoting *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003)). "Whether sovereign immunity defeats a trial court's subject-matter jurisdiction is a question of law . . . ." *Tex. S. Univ. v. Villarreal*, 620 S.W.3d 899, 904 (Tex. 2021). "We review orders on pleas to the jurisdiction *de novo.*" *Matzen*, 2021 WL 5977218, at \*3.

Resolution of a plea to the jurisdiction may be on the pleadings or an evidentiary record; "[a] plea to the jurisdiction 'may challenge the pleadings, the

---

[2]"Governmental immunity is the derivative form of sovereign immunity that may extend to political subdivisions of the [S]tate, including school districts." *White Deer Indep. Sch. Dist. v. Martin*, 596 S.W.3d 855, 863 (Tex. App.—Amarillo 2019, pet. denied).

existence of jurisdictional facts, or both.'" *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020) (quoting *Clark*, 544 S.W.3d at 770).

When a plea to the jurisdiction attacks the pleadings, the following principles apply:

- "If a plea 'challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause.'" *Id.*

- "In determining whether the plaintiff has met that burden, 'we liberally construe the pleadings, taking all factual assertions as true and looking to [the plaintiff's] intent.'" *Id.* (quoting *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015)).

- "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court[']s jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency[,] and the plaintiffs should be afforded the opportunity to amend." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004).

- "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.* at 227.

14

The following principles apply to a plea to the jurisdiction that goes beyond a facial challenge to the pleadings:

- When "the plea challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim." *Clark*, 544 S.W.3d at 770–71.

- When a plea to the jurisdiction requires the consideration of evidence, we use a process that mirrors a traditional motion for summary judgment. *Id.* at 771. Thus, the following shifting burdens apply:

  o "Initially, the defendant carries the burden to meet the summary[-]judgment[-]proof standard for its assertion that the trial court lacks jurisdiction." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012).

  o "If [the defendant carries that burden], the plaintiff is then required to show that a disputed material fact exists regarding the jurisdictional issue." *Id.*

  o "If a fact issue exists, the trial court should deny the plea." *Id.*

15

o "But if the relevant evidence is undisputed or the plaintiff fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law." *Id.*

o "In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor." *Clark*, 544 S.W.3d at 771.

o Finally, a trial court may defer the decision on a plea to the jurisdiction: "[w]hether a determination of subject-matter jurisdiction can be made in a preliminary hearing or should await a fuller development of the merits of the case must be left largely to the trial court's sound exercise of discretion." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

We address the question of whether there is jurisdiction on a claim-by-claim basis. *Amador v. City of Irving*, No. 05-19-00278-CV, 2020 WL 1316921, at *7–8 (Tex. App.—Dallas Mar. 20, 2020, no pet.) (mem. op.) ("[T]he Supreme Court has made clear that 'a plaintiff must demonstrate that the court has jurisdiction over . . . each of his claims; the court must dismiss those claims (and only those claims) over which it lacks jurisdiction.'" (quoting *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 152–53 (Tex. 2012))).

16

**B.** **The trial court properly denied the District's plea to the jurisdiction directed at the Parents' TOMA claim because its challenge to those claims should be resolved on the merits rather than as a jurisdictional challenge.**

The District initially claims that the trial court erred by denying its plea to the jurisdiction directed at the parents' TOMA claim. The District's argument is that the Parents make no open-meetings challenge to the August 26 meeting at which the existing mask policy was adopted, and thus, "[t]his action by the Board remedies any alleged TOMA violation regarding allegations that past actions regarding the mask policy did not comply with TOMA." The Parents respond that the District's argument is a merits-based attack and not an attack that would deprive the trial court of jurisdiction. We agree with the Parents that the question of whether the Board's alleged ratification remedies the TOMA violation does not implicate the trial court's jurisdiction.

No one challenges that the District's Board is subject to TOMA. Indeed, TOMA applies to "a school district board of trustees." *See* Tex. Gov't Code Ann. § 551.001(3)(E) (defining "[g]overnmental body" to include "a school district board of trustees"). The District acknowledges that the Parents have standing to assert a TOMA claim. TOMA provides that "[a]n interested person, including a member of the news media, may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body." *See id.* § 551.142. Finally, TOMA provides that "[a]n action

17

taken by a governmental body in violation of this chapter is voidable." *See id.* § 551.141.

There is little focus in the briefing on how the Parents postured their TOMA claim. In their first amended petition, the Parents did focus on the Board's actions with respect to a special meeting held on August 10. In essence, the petition alleged that an eleventh-hour change in the agenda for the meeting allowed an executive session of the Board that was not authorized by the provision of TOMA that permits a closed meeting for consultation with an attorney. The petition then noted that the Board actually adopted the mask policy at a meeting held on August 26. Based on the facts pleaded, the Parents alleged a TOMA violation as follows:

> 53. Due to the absence of [a] public record regarding how and why the school mask mandate was adopted, [the District has] failed to demonstrate that [the mandate] is predicated on a rigorous scientific and medical basis. Even the Governor's expired mask mandates exempted children, yet the District, at some point, some place[,] adopted some policy that differed from the Governor's guidance, though that policy appears to have been developed without an open vote.
>
> 54. Emails attached as Exhibits 4, 5, and 6 show that District trustees recognized:
>
> > a. they needed to vote on COVID-19 policies (Exh. 3, on July 20, 2020),
> >
> > b. at some point there was a policy established (Exh. 4, March 10, 20[21]), and
> >
> > c. they must vote to change the established policy (Exh. 5, March 21, 2021).

18

55. The Board's meeting minutes from May 25, 2021[,] confirm the necessity of a vote, as the Board voted on COVID-19 policies. Exhibits 9a, 9b.

56. Having adopted such a policy, a superintendent has no authority to overrule the policy at his whim. *Based on the illegal addition of the executive session at the last minute on August 11, 2021,*[3] *[the Parents] allege that the Board met with Scribner and held an illegal vote to change policy, which Scribner carried out.*

57. *[The Parents] assert that any major change in school policy requires a vote of the trustees that follows the requirements of the [TOMA]; an illegal meeting where the Board of Trustees deliberate, reach consensus, and then instruct Scribner to change the policy as though he has the authority to do so by himself is a violation of the [TOMA].*

58. Indeed, as shown, only the school district's Board of Trustees has the exclusive power and duty to govern and oversee the management of the public schools of the district under Tex. Educ. Code § 11.151(b).

59. The Board cannot delegate that power, to a Superintendent or otherwise, because Tex. Educ. Code § 11.253(a) explicitly requires that each school district, rather than each Superintendent, maintain the relevant policy. *See Rivera v. Hous*[.] *Indep. Sch. Dist.*, 349 F.3d 244 (5th Cir. . . . 2003).

60. Should the Court wonder why this matters - one can note that school board members can be removed under § 87.012 of the Texas Local Government Code for incompetence and misconduct, such as breaking laws. Board members have duties as elected officials - the buck stops with them. [Emphasis added.]

As we read the petition, the Parents rely on the TOMA violation to support both their declaratory-judgment claim and their request for injunctive relief. Under the claim for declaratory relief, the Parents allege that they "seek to challenge validity

---

[3]It appears that the date referenced is a typo and should refer to August 10.

of the mask policy, as it appears to be an illegally deliberated policy adopted during a secret vote in an illegally noticed executive session." Under their claim for injunctive relief, the Parents allege that they "are entitled to a TRO[] because [the District] can show no harm to the ISD[] in granting the relief requested. [The District] violated the legal process and [TOMA]."

The District makes only a glancing attack on the Parents' allegations that the Board violated TOMA with respect to the August 10 meeting. That attack comes in a footnote in the District's reply brief that states,

> [a]s discussed elsewhere, discussion regarding a potential policy by the Board would not create a TOMA violation because it is undisputed that there was an agenda item for discussion of back[-]to[-]school policies. Notably, although [the Parents] allege [that] there was "a secret vote in an illegally noticed executive session" at the August 1[0] meeting, [the Parents] concede that they do not know whether any such vote occurred and do not believe that this allegation is relevant to their TOMA claim. [Record reference omitted.]

This footnote offers a crabbed view of the Parents' argument, which is more subtle than the District acknowledges:

> [The Parents] take the position that the Board and [the] District adopted a policy without an open vote, a violation of [TOMA]. Whether a secret vote occurred or not is not relevant; policies set by Board vote must be amended by Board vote. As the illegal executive session that gave rise to the disputed policy was closed, [the Parents] cannot state with certainty that a vote occurred. They can be sure that, at the least, a consensus occurred that allowed the District's [S]uperintendent to walk out and change the District's policy that had been created by a formal Board vote.

We have detailed the Parents' allegations and the District's attack on their substance to demonstrate that the Parents have alleged a TOMA violation and that the District's attack on those allegations does not negate the possibility that a TOMA violation occurred on August 10.

Again, the District's primary argument is one of no harm–no foul because the Parents do not claim that there was a TOMA violation with respect to the August 26 meeting when the mask policy was adopted by the District's Board. The Parents' response to this argument is two-pronged: (1) the District's contention is one that should be resolved on the merits; and (2) the August 26 meeting cannot ratify an act that resulted from the deliberations on August 10 when those deliberations were conducted in violation of TOMA. We do not reach the second issue but agree with the holding of our sister court in Dallas that the question raised in that issue is not a jurisdictional question; thus, we agree with the Parents that the trial court properly denied the District's plea to the jurisdiction.

The Dallas Court of Appeals in *City of Plano v. Hatch* analyzed whether an attack on the invalidity of a ratification argument, such as the one raised here, implicated the trial court's jurisdiction and concluded that it did not. 584 S.W.3d 891 (Tex. App.—Dallas 2019, no pet.).[4] *Hatch* involved an argument by the City of Plano in response to a TOMA claim that parallels the District's argument in response to the Parents' TOMA claim—"the City argues that its subsequent ratification of the Ordinance on

[4]The Parents erroneously cite *Hatch* as being an opinion out of this court.

21

December 8, 2014[,] deprived the trial court of jurisdiction over the Hatches' complaints about the City's actions prior to December 8." *Id.* at 900.

The governmental entity in *Hatch* relied on a prior opinion from the Dallas Court of Appeals, a case on which the District places strong reliance in the present appeal. The case, *City of Combine v. Robinson*, held that a vote conducted at a subsequent meeting of the city council ratified a vote taken at a prior meeting and negated a justiciable controversy about the validity of the action at the prior meeting. No. 05-10-01384-CV, 2011 WL 3570510, at *3 (Tex. App.—Dallas Aug. 16, 2011, no pet.) (mem. op.). *Hatch* distinguished *Robinson* because the plaintiffs in *Hatch* "pleaded that the City's subsequent ratification was the result of the City's TOMA violations." *Hatch*, 584 S.W.3d at 901. *Hatch* explained why it viewed the argument raised by the City of Plano as one directed to the merits of the plaintiffs' claims as follows:

> Here, the City's arguments that "TOMA does not make an ordinance voidable when it was adopted in a legal, open meeting" go to the merits of the Hatches' claims. *See Hays* [*Cnty. v. Hays Cnty. Water Plan. P'ship*], 69 S.W.3d [253,] 259 [(Tex. App.—Austin 2002, no pet.)] ("In reality, Hays County's argument that no action was taken in violation of [TOMA] goes to the merits of [the plaintiff's] claims and thus is not the proper subject of an interlocutory appeal."); [*City of Austin v.*] *Savetownlake.Org*, [No. 03-07-00410-CV,] 2008 WL 3877683, at *5 [(Tex. App.—Austin Aug. 22, 2008, no pet.) (mem. op.)] ("[T]he City also argues that Savetownlake does not make a valid [TOMA] claim to confer jurisdiction on the trial court[] . . . because the City did not violate [TOMA] as alleged by Savetownlake. . . . [T]his argument attacks Savetownlake's right to relief under the statute, not the trial court's subject[-]matter jurisdiction to award it.").

*Id. Hatch* expressed no opinion on the merits of the ratification argument made by the residents suing the City of Plano but merely "conclude[d] [that] the trial court did not err by rejecting the City's argument that the Council's subsequent vote deprived the trial court of jurisdiction." *Id.* at 902.

Also, as other courts have noted, "TOMA expressly waives sovereign immunity for violations of the Act." *Gillium v. Santa Fe Indep. Sch. Dist.*, No. 01-10-00351-CV, 2011 WL 1938476, at *7 (Tex. App.—Houston [1st Dist.] May 12, 2011, no pet.) (mem. op.) (citing Tex. Gov't Code Ann. § 551.142). In view of this waiver of immunity, when a governmental entity's arguments are couched in terms of whether a claim has merit, those claims should be resolved on the merits. *Id.*

Here, the Parents' allegations, though not using the term "ratification," allege that the District's Board improperly met in secret to formulate a policy and allegedly used the Superintendent to announce the secretly formulated policy as a cover for the actions that they did not want to disclose. We express no opinion on the validity of that claim and also note that the District, other than the glancing attack we referenced above, did nothing to challenge that claim on appeal. Instead, the District relies on its ratification theory. Based primarily on *Hatch*, we hold that the District's argument is one to be resolved on the merits. *See* 584 S.W.3d at 901–02. The trial court did not err by denying the District's plea to the jurisdiction attacking the Parents' TOMA claim, at least to the extent the claim sought injunctive relief.

Though the trial court properly denied the District's jurisdictional challenge to the Parents' TOMA-violation claim, we again note that the trial court did not predicate its injunction on a TOMA violation. Thus, we cannot sustain the injunction on the basis of a TOMA violation. Also, though no party raises the issue, we must also note that the Parents cannot plead a declaratory-judgment claim against the District on the basis of a TOMA violation in view of the Texas Supreme Court's holding that TOMA does not waive governmental immunity for anything other than a mandamus or injunction action.[5]

**C.** **The trial court erred by denying the District's plea to the jurisdiction directed at the Parents' UDJA claim. With respect to other potential claims that might challenge the District's mask policy, the Parents disavowed that they were bringing an ultra vires claim, and though their pleading references a constitutional violation, it does not specify the right being violated.**

The District launches a multi-prong attack against the Parents' UDJA claim. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001–.011. Our task in resolving this issue is complicated by the fact that the Parents' briefing is conclusory and is unsupported by any authority. Though left to our own devices, we resolve the District's arguments

---

[5]The Parents seek declaratory relief based on the District's alleged TOMA violation. The District mentions the supreme court's opinion in *Town of Shady Shores v. Swanson*, 590 S.W.3d 544 (Tex. 2019). But no one discusses its holding that the waiver of immunity found in TOMA is limited because TOMA "goes on to state very clearly the authorized mechanism to obtain that result: a suit 'by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation' of the Act. Tex. Gov't Code §§ 551.141–.142(a)." *Id.* at 554–55; *see also Carowest Land, Ltd. v. City of New Braunfels*, 615 S.W.3d 156, 158 (Tex. 2020) (op. on reh'g) ("In *Swanson*, this Court held that '[TOMA] does not waive governmental immunity from suit for [declaratory-judgment] claims as a matter of law.'").

24

as follows: (1) we reject the District's standing challenge to the UDJA claim; (2) we accept the District's argument that, as presently postured, the Parents have not alleged a viable UDJA claim but conclude that the Parents attempted to allege a viable claim to support injunctive relief; and (3) we reject the District's argument that the Parents should have exhausted administrative remedies before bringing suit. The upshot of these resolutions is that, because the trial court specifically stated that it was not relying on the Parents' TOMA claim as a basis for the injunction, the cause of action that formed the basis of the trial court's injunction was not viable and thus we dissolve the injunction. However, we remand this matter to the trial court to accord the Parents an opportunity to replead.

### 1. We reject the District's standing challenge to the Parents' UDJA claim.

In its first argument, the District argues that the Parents "do not have standing to bring a UDJA claim challenging the lawfulness of governmental actions or seeking to enforce laws against a governmental entity." This argument paints with too broad a brush. The District plucks broad language from one opinion it cites and leverages that language into a general proposition. But the cases that the District cites and the other principles that it references in its brief acknowledge that there are a host of means to launch a challenge to the actions of public officials.

It is a truism that there is a lack of standing to launch an abstract attack on governmental action. The District makes this point by highlighting a quote from the

Texas Supreme Court's discussion in a case involving taxpayer standing. *See Williams v. Lara*, 52 S.W.3d 171, 180 (Tex. 2001). *Williams* noted the limitations in taxpayer-standing principles because "'[g]overnments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review.'" *Id.* But even the case from which this quote is plucked noted that in certain circumstances a taxpayer may have standing. *Id.* One of the other cases cited by the District involved voter standing and stated the principle that the standing inquiry turns on "whether the plaintiffs sue solely as citizens who insist that the government follow the law." *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 8 (Tex. 2011). The case then concluded that the voters before it had standing to raise their challenge. *Id.* at 11.

Thus, the cases cited by the District demonstrate that the standing question is far more nuanced than the District's suggestion that there is a blanket prohibition on citizen challenges to a government official's exercise of discretion. Indeed, the District acknowledges that "the [Texas] Legislature may grant private standing to bring such actions, but it must do so clearly." *Brown v. De La Cruz*, 156 S.W.3d 560, 566 (Tex. 2004).

The District also cites our opinion in *Schmitz v. Denton County Cowboy Church* and its holding that a private party could not seek an injunction to enforce a town's zoning laws against another property owner. 550 S.W.3d 342, 359–60 (Tex. App.—Fort Worth 2018, pet. denied) (mem. op. on reh'g). We held in *Schmitz* that the

26

complaining property owner had no standing to assert such a claim because the relevant statutory provision governing zoning enforcement "empowered only the [t]own to enforce its zoning ordinances, divesting the trial court of jurisdiction over Appellants' private-enforcement attempt based on their lack of standing." *Id.* at 360. Here, the Parents are not acting as a private attorney general to take on a role assigned to government to enforce a law. Instead, they are challenging the impact of the District's actions on their children. How the principle of *Schmitz* applies in this circumstance is not explained by the District.

As an abstraction, the District's argument that citizens do not have a generalized right of standing to challenge every law they disagree with is correct. But, whether by design or not, the District is not making the actual standing argument that could impact the Parents' claim, i.e., a claim that would have to be predicated on the assertion that the Parents lack standing to challenge a policy that impacts the education of their children. The true substance of the District's argument is that the Parents have not invoked the remedy that overcomes governmental immunity, i.e., their declaratory-judgment claim asserting that the District's mask policy violates the Governor's order or the failure of the Parents to meet a precondition to making that challenge—the Parents' alleged failure to exhaust their administrative remedies. Thus, we reject the District's abstract standing challenge, but we will analyze the District's arguments in the specific context in which they fall.

## 2. The trial court erred by denying the District's jurisdictional challenge to the Parents' UDJA claim.

We frankly struggle to unravel the Parents' allegations and their arguments on appeal on their UDJA claim.[6] Because the trial court's basis for its temporary-injunction order appears to be grounded on the claim that sought a declaration that the District's mask policy violated GA-38, we set out the Parents' allegations in detail. Outside a claim of a TOMA violation, the sum total of the Parents' allegations under the other cause of action that they allege—their UDJA claim—are as follows:

> 63. [The Parents] seek a declaration that the District's mask policy is void for illegality and thus unenforceable, based on their own standing and special injuries they are suffering, including bullying, isolation, etc., as described above.
>
> 64. [The Parents] seek to challenge validity of the mask policy, as it appears to be an illegally deliberated policy adopted during a secret vote in an illegally noticed executive session. [*The Parents*] *assert a claim under the* [*UDJA*] *to allow them to seek a determination of a question of validity arising under the face-covering policy in light of GA-38*.
>
> 65. [The Parents] seek to clarify their legal relations with regard to these "legal relations" as they are referenced by Tex. Civ. Prac. & Rem. Code § 37.004(a).
>
> 66. [The Parents] do not seek only to challenge the lawfulness of District actions, but they also seek a declaration of rights regarding the

---

[6]As we have noted, the trial court's order with respect to the District's motion to strike the Parents' corrected first amended petition stated that "the [c]ourt did not consider the Corrected First Amended Petition in any other rulings made this day." The order with the quoted provision was signed the same day as the temporary-injunction order. No one argues that the quoted provisions of the order denying the motion to strike left the Parents without a pleading to support their request for injunctive relief.

District's mask policy, which when implemented is depriving children of a constitutional right to education.

67. As described in the Petition for Writ of Mandamus filed in the Fifth District Court of Appeals, styled *In Re: Greg Abbott*, Cause No. 05-21-00687-CV, [Governor] Abbott's GA-38 constitutes state law, and cannot be trumped by a local despot, no matter how much he wants to do something other than follow the law.

68. Also, in Cause No. 21-0720, the Texas Supreme Court has recently stayed an injunction to stop enforcement of GA-38 in Bexar County. This action should be a clear indication that [Governor] Abbott is going to win these challenges to his authority. [The Parents] are not obligated to wait. [Emphasis added.] [Exhibit references omitted.]

The clarity of the Parents' UDJA claim is not improved with their description

of that claim in their response to the District's plea to the jurisdiction:

10. [The Parents], unlike [the District], are not challenging GA-38 or any other Texas law for that matter, and so they need not implicate the State's immunity; *they seek a declaration with regard to the District - can a school district adopt a militant mask policy without infringing upon a student's right to a free and appropriate education, and does such a policy violate rights which GA-38 protects?*

11. As both the Original and First Amended Petition make clear, the mask rule is vague. Because it is based on political science instead of medical science, it has no specification - can the mask be made of cheese cloth, table tennis netting, or is only an N95 sufficient? [The Parents] have not stated that the District may not implement any mask covering under any conditions whatsoever[] but seek a declaration regarding what rights they have, as expressed above. [The Parents] seek to determine if a vague rule comports with their rights, or is the mask rule completely invalid? [Emphasis added.]

Thus, the emphasized portions of the Parents' allegations and contentions turn on a

declaration of the Parents' rights predicated on the claim that the District mask policy

contravenes GA-38.

And, again, the claim—that the District acted in violation of the Governor's order—appears to be the basis for the trial court's temporary injunction as reflected in its statement that "[t]he [c]ourt FINDS that the [District's] face-covering rule as described by [the Parents] was made without authority and is contrary to and in violation of [Governor] Abbott's Executive Order GA-38." Other than the vague reference to the lack of authority, it is clear that the basis of the injunction is that the District's mask policy contravenes the Governor's prohibition on the imposition of such a mandate.

On appeal, the Parents' briefing provides us with no substantive explanation of why they contend that they have a valid UDJA claim. The portion of the Parents' brief arguing why jurisdiction exists cites no authority and does little more than parrot the allegations in their petition:

> 46. [The Parents] are not challenging GA-38 or any other Texas law[,] and so they need not implicate the State's immunity; they seek a declaration: can a school district adopt a militant mask policy without infringing upon a student's right to a free and appropriate education, and does such a policy violate rights which GA-38 protects?

> 47. [The Parents] did not state that the [District] may not implement any mask rules under any conditions whatsoever[] but seek a declaration regarding what rights they have, as expressed above.

> 48. [The Parents] believe that FWISD cannot delegate the creation of district-wide rules to a superintendent's general authority, especially when those rules have an impact on the education of small children.[7]

---

[7]This allegation appears to have been a leftover from a prior pleading of the Parents because the Parents acknowledge that the Board has adopted a policy.

49. [The Parents] have asserted that a militant mask rule that masks children unnecessarily is a violation of the constitutional right to an education provided in the least restrictive environment and that this right cannot be cavalierly abridged by a school district acting without authority. That constitutional right predates GA-38 and will continue long after GA-38 is no longer an issue.

50. [The Parents] take the position that the Board and [the] District adopted a policy without an open vote, a violation of [TOMA]. Whether a secret vote occurred or not is not relevant; policies set by Board vote must be amended by Board vote. As the illegal executive session that gave rise to the disputed policy was closed, [the Parents] cannot state with certainty that a vote occurred. They can be sure that, at the least, a consensus occurred that allowed the District's [S]uperintendent to walk out and change the District's policy that had been created by a formal Board vote.

51. [The Parents] therefore fall completely into the allowed declarations described by [the District]: they seek a declaration regarding their rights and status with respect to the District's mask rule[] and the constitutional validity of that rule.

52. A last-minute executive session during which the Board of Trustees purportedly discussed GA-38 took place. Directly following that executive session, Scribner announced the new policy. [The Parents] assert that what occurred was an illegal deliberation culminating in either an illegal vote for the new policy or a new policy illegally implemented without a vote.

The remaining paragraphs of the Parents' brief discuss a TOMA violation.

Thus, other than the TOMA violation, as we parse the Parents' allegations, it appears that they seek declarations that (1) the District's mask policy violates GA-38 because of the Governor's prohibition on mask mandates, (2) the mask policy deprives their children of a right to a free and appropriate education, and (3) the District's mask policy is defective because it is vague and has no rational basis.

Turning first to the claim that the District's mask policy contravenes GA-38, the District challenges the trial court's denial of its plea to the jurisdiction because "[t]he trial court should also have dismissed [the] Parent[s'] . . . UDJA [claim] because the UDJA does not waive immunity for claims that a local governmental entity is violating the law or challenging local policies adopted by governmental entities." We agree that, in essence, the Parents are arguing for a declaration of their rights based on the claim that the District is violating the law established by GA-38 and that the trial court granted temporary injunctive relief based on that claim. The District is correct that the UDJA does not waive governmental immunity for such a claim.

A concise summary of the relevant principles governing what type of claim may be asserted against a governmental entity under the UDJA is found in *City of New Braunfels v. Carowest Land, Ltd.*:

> The UDJA gives Texas courts the power to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tex. Civ. Prac. & Rem. Code [Ann.] § 37.003(a). "A person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or legal relations thereunder." *Id.* § 37.004(a). The UDJA, however, does not create or augment a trial court's subject[-]matter jurisdiction—it is "merely a procedural device for deciding cases already within a court's jurisdiction." *Tex*[.] *Ass'n of Bus. v. Tex*[.] *Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *see Tex*[.] *Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) . . . (noting that [the] Texas Supreme Court has consistently stated that [the] "UDJA does not enlarge the trial court's jurisdiction but is 'merely a procedural device for deciding cases already within a court's jurisdiction'"). Accordingly, the UDJA "is not a general waiver of sovereign immunity" but only waives "immunity for certain claims." *Tex*[.] *Parks & Wildlife Dep't v. Sawyer Tr*[.], 354 S.W.3d 384, 388 (Tex. 2011); *McLane Co. v. Tex*[.]

32

*Alcoholic* [*Beverage*] *Comm'n*, 514 S.W.3d 871, 876–77 (Tex. App.—Austin 2017, pet. [denied]); *see Ex* [*p*]*arte Springsteen*, 506 S.W.3d [789,] 798–99 [(Tex. App.—Austin 2016, pet. denied)] ("[T]he UDJA's sole feature that can impact trial-court jurisdiction to entertain a substantive claim is the statute's implied limited waiver of sovereign or governmental immunity that permits claims challenging the validity of ordinances or statutes." (citing *Tex*[.] *Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 634–35 (Tex. 2010) (citing Tex. Civ. Prac. & Rem. Code [Ann.] § 37.006(b)))).

Further, the UDJA does not waive immunity "when the plaintiff seeks a declaration of his or her rights under a statute or other law." *Sefzik*, 355 S.W.3d at 621; *see City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009) (explaining that "government entities themselves—as opposed to their officers in their official capacity—remain immune from suit" against claims brought under [the] UDJA that challenge [the] government's actions taken under law); *McLane Co.*, 514 S.W.3d at 876–77 (concluding that "[the] UDJA does not waive sovereign immunity for 'bare statutory construction claims'"). Such a claim asserted directly against the governmental entity is barred by immunity unless the [Texas] Legislature has expressly waived immunity elsewhere as to that particular claim. *Sefzik*, 355 S.W.3d at 621–22; *see Sawyer Tr*[.], 354 S.W.3d at 388 (explaining that "sovereign immunity will bar an otherwise proper [U]DJA claim that has the effect of establishing a right to relief against the State for which the [Texas] Legislature has not waived sovereign immunity" (citing *City of Hous. v. Williams*, 216 S.W.3d 827, 828–29 (Tex. 2007) . . .)). "And a litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit." *Sawyer Tr*[.], 354 S.W.3d at 388 (citing *Heinrich*, 284 S.W.3d at 370–71; *Tex*[.] *Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002)).

549 S.W.3d 163, 170–71 (Tex. App.—Austin 2017), *vacated on other grounds by* 615 S.W.3d 156 (Tex. 2020).

We have also explained why there is no waiver of immunity for a UDJA claim that seeks construction of a statute or seeks a declaration of parties' rights under a statute:

The UDJA's waiver of immunity is limited to challenges to a statute or an ordinance's validity. [*Hegar v. CSG Forte Payments*, No. 03-19-00325-CV, 2020 WL 7233605, at *3 (Tex. App.—Austin Dec. 9, 2020, no pet.) (mem. op.)]. As the Austin court has explained, the UDJA does not waive immunity on the questions of statutory construction or a declaration of rights:

> As the Texas Supreme Court has clarified, the UDJA's sole feature that can affect a trial court's jurisdiction to entertain a substantive claim is the statute's implied limited waiver of sovereign immunity for claims challenging the validity of ordinances or statutes. *See Tex*[.] *Lottery Comm'n*[ . . . ], 325 S.W.3d [at] 634–35 . . . (citing Tex. Civ. Prac. & Rem. Code [Ann.] § 37.006(b); *Tex*[.] *Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994)). It has squarely repudiated the once widespread notion that the UDJA confers some broader right to sue the government to obtain "statutory construction" or a "declaration of rights." *See Sefzik*, 355 S.W.3d at 621–22 ("The UDJA does not waive the [S]tate's sovereign immunity when the plaintiff seeks a declaration of his or her rights under a statute or other law."); . . . *Sawyer Tr.*, 354 S.W.3d [at] 388 . . . ("there is no general right to sue a state agency for a declaration of rights" in light of limited scope of UDJA's immunity waiver).

*Id.*; *see also Town of Shady Shores* . . . , 590 S.W.3d [at] 552–53 . . . ("[T]he UDJA does not contain a general waiver of sovereign immunity, providing only a limited waiver for challenges to the validity of an ordinance or statute. UDJA claims requesting other types of declaratory relief are barred absent a legislative waiver of immunity with respect to the underlying action." (citations omitted)); *City of San Antonio v. San Antonio Park Police Officers Ass'n*, No. 04-20-00213-CV, 2021 WL 2942531, at *5–6 (Tex. App.—San Antonio July 14, 2021, [pet. filed]) (mem. op.) (holding that the UDJA does not waive immunity for a claim seeking a declaration of rights under Local Government Code Chapter 143); *Pidgeon v. Turner*, 625 S.W.3d 583, 598 (Tex. App.—Houston [14th Dist.] 2021, [pet. filed]) ("Appellants, in their amended petition, request declarations to address violations of state law; none challenge a statute or [an] ordinance. Because appellants seek only to enforce existing law, this exception to governmental immunity is not available." (footnote omitted)).

34

*Arlington Pro. Firefighters v. City of Arlington*, No. 02-19-00156-CV, 2021 WL 4205012, at *25 (Tex. App.—Fort Worth Sept. 16, 2021, no pet.) (mem. op.).

Here, the Parents assert that they are seeking some generalized declaration of what their rights are. But by taking harbor in this level of generality, they are attempting to camouflage the declaration that they really seek—a declaration that GA-38 has the force of law and that a proper construction of the disaster declaration prohibits the District's imposition of a mask mandate. The Parents want to enforce an existing law in the form of GA-38. That is simply not a declaratory-judgment claim for which governmental immunity has been waived. Thus, the trial court erred by denying the District's challenge to the Parents' UDJA claim.

### 3. The Parents disavowed that they were bringing an ultra vires claim.

Of course, the lack of a declaratory-judgment claim does not mean that a party who claims that a governmental official is violating the law is without a remedy; the law permits ultra vires claims against government officials who flaunt the law. Though the Parents had such a remedy available to them, they did not bring that claim as they could only bring that claim against a governmental official and not a governmental entity, such as the District. To the extent that the Parents could have lodged such a claim against the Superintendent, they disavowed that they were doing so. Thus, as pleaded and on the basis of their statements, an ultra vires claim cannot save the Parents' claim from the District's jurisdictional challenge.

When a governmental official violates the law, an ultra vires claim may be brought; that claim has the following parameters:

> Sovereign immunity extends to state officials acting in their official capacity. *See Heinrich*, 284 S.W.3d at 369–70. An exception to sovereign immunity applies when a party alleges that the government officer acted "without legal authority or failed to perform a purely ministerial act." *Id.* at 372. To fall within this exception to immunity, however, "a suit must not complain of a government officer's exercise of discretion[] but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* An officer acts without legal authority if he "exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Hous*[.] *Belt & Terminal Ry. Co. v. City of Hous*[.], 487 S.W.3d 154, 158 (Tex. 2016). If the plaintiff alleges[] or ultimately can prove only acts within the officer's legal authority and discretion, the claim seeks "to control state action" and is barred by sovereign immunity. *Id.*; *KEM Tex., Ltd. v. Tex*[.] *Dep't of Transp.*, No. 03-08-00468-CV, 2009 WL 1811102, at *2 (Tex. App.— Austin June 26, 2009, no pet.) (mem. op.).

*Hartzell v. S.O.*, 613 S.W.3d 244, 251–52 (Tex. App.—Austin 2020, pet. filed). Alleging a governmental official has acted "'without legal authority' has two fundamental components: (1) authority giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority." *Hall v. McRaven*, 508 S.W.3d 232, 239 (Tex. 2017)).

The proper defendant for an ultra vires claim is not a governmental entity but instead is a governmental official or an employee of a governmental entity. *See Heinrich*, 284 S.W.3d at 372–73. "The basic justification for this *ultra vires* exception to [governmental] immunity is that *ultra vires* acts—or those acts without authority— should not be considered acts of the [entity] at all." *Hall*, 508 S.W.3d at 238.

36

"Consequently, '*ultra vires* suits do not attempt to exert control over the [governmental entity]—they attempt to reassert the control of the [governmental entity]' over one of its agents." *Id.* (quoting *Heinrich*, 284 S.W.3d at 372).

Thus, the Parents cannot bring an ultra vires claim against the District, and they did not sue the District's Board members in their official capacities. Further, the Parents appear to disavow that they are bringing an ultra vires claim against the Superintendent. Specifically, their response to the District's plea stated,

> Thus, [the Parents] fall completely into the allowed declarations described by [the District] - they seek a declaration regarding their rights and status with respect to the District's mask rule, and the constitutional validity of that rule, and not a claim against Scribner for *ultra vires* actions.

The Parents placed themselves between a rock and a hard place jurisdictionally; they clung to their UDJA claim, which could not overcome the District's immunity and then disavowed the claim that might have provided them the relief that they sought.

### 4. The Parents' petition suggests that they seek an injunction based on a constitutional violation but have failed to articulate what constitutional provision has been violated.

There is another possible avenue of relief available to the Parents: an injunction based on a constitutional violation. At present, because the Parents have failed to articulate what constitutional violation that they claim has occurred, we are unable to determine whether their claim is viable or not.

37

With respect to the remedy of an injunction based on a constitutional violation,

this court has stated,

> The Texas Supreme Court has explained that governmental entities do not possess immunity for violations of the Texas constitution because
>
>> [t]he guarantees found in the Bill of Rights are excepted from the general powers of government; *the State has no power to commit acts contrary to the guarantees found in the Bill of Rights.* Tex. Const. art. 1, § 29. Section 29 has been interpreted as follows: any provision of the Bill of Rights is self-executing to the extent that anything done in violation of it is void. . . . Such a declaration [of voidness] is different from seeking compensation for damages, or compensation in money for a loss or injury. Thus, suits for equitable remedies for violation of constitutional rights are not prohibited. Section 29 does not support . . . a private right of action for damages . . . under the Texas [c]onstitution.
>
> *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148–49 (Tex. 1995) (emphasis added); *see also, e.g.*, *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 391–92 (Tex. 2007) (recognizing that governmental entities may be sued for injunctive relief under the Texas constitution); *City of Arlington v. Randall*, 301 S.W.3d 896, 907 (Tex. App.—Fort Worth 2009, pet. denied) (recognizing that governmental entities may be sued for equitable relief under the Texas constitution); *Univ. of Tex. Sys. v. Courtney*, 946 S.W.2d 464, 469 (Tex. App.—Fort Worth 1997, writ denied) (op. on reh'g) (same); *Harris [Cnty.] v. Going*, 896 S.W.2d 305, 308–09 (Tex. App.— Houston [1st Dist.] 1995, writ denied) (same).

*City of Fort Worth v. Jacobs*, 382 S.W.3d 597, 598 (Tex. App.—Fort Worth 2012, pet.

dism'd).

More recent supreme court authority has confirmed that when a claim is

directed at the constitutionality of a statute or a regulation, and not a governmental

official based on an ultra vires act, suit may be brought against the governmental

38

entity itself.  *Patel v. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 76–77 (Tex. 2015).  In *Patel*, the State acknowledged the Texas Supreme Court's "decisions to the effect that sovereign immunity is inapplicable when a suit challenges the constitutionality of a statute and seeks only equitable relief."  *Id.* at 75–76.  When the State claimed that the supreme court had departed from the line of cases standing for this principle, the supreme court confirmed that it had not.  *Id.* at 76.  *Patel* went on to explain that

> [i]n this case, the [plaintiffs] did not plead that the Department and Commission officials exceeded the authority granted to them; rather, they challenged the constitutionality of the cosmetology statutes and regulations on which the officials based their actions.  The State proposes that an official can act ultra vires either by acting inconsistently with a constitutional statute or by acting consistently with an unconstitutional one.  It urges that the [plaintiffs'] claims fall within the "acting consistently with an unconstitutional statute" category.  But the premise underlying the ultra vires exception is that the State is not responsible for unlawful acts of officials.  *Heinrich*, 284 S.W.3d at 372.  The State's proposal would effectively immunize it from suits claiming a statute is unconstitutional—an illogical extension of that underlying premise.

*Id.*; *see also El Paso Indep. Sch. Dist. v. McIntyre*, 584 S.W.3d 185, 199 (Tex. App.— El Paso 2018, no pet.) (stating that for the equitable rule to apply, the claim must be directed not to the action of a governmental employee but to a rule or a statute).

But to invoke the rule permitting a party to seek equitable relief for a violation of constitutional rights, there must be a pleading of a viable constitutional claim.  As the Dallas Court of Appeals recently explained,

> The Texas Constitution's Bill of Rights does not provide a private right of action for damages for violations of constitutional rights, but suits for equitable or injunctive relief may in some instances be brought to

remedy violations of the Texas Constitution. *See City of Elsa . . .* , 226 S.W.3d [at] 391 . . . ; . . . *Bouillion*, 896 S.W.2d [at] 148–49 . . . ; *City of Hous*[.] *v. Downstream* [*Env't*]*, L.L.C.*, 444 S.W.3d 24, 38 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). Even so, however, "this limited waiver of immunity exists only to the extent the plaintiff has pleaded a viable constitutional claim." *Downstream* [*Env't*], 444 S.W.3d at 38; *City of Hous*[.] *v. Johnson*, 353 S.W.3d 499, 504 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). The fact that a plaintiff alleges unconstitutional conduct by an official does not alone mean it has avoided immunity and invoked a trial court's jurisdiction. *Creedmoor–Maha Water Supply Corp.*[ *v. Tex. Comm'n on Env't Quality*], 307 S.W.3d [505,] 515 [(Tex. App.—Austin 2010, no pet.)]. A plaintiff must still plead a valid constitutional violation. *See Patel . . .* , 469 S.W.3d [at] 77 . . . (stating "principle that claims against state officials—like all claims—must be properly pleaded in order to be maintained"); *Klumb v. Hous*[.] *Mun.* [*Emps.*] *Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015) ("While it is true that sovereign immunity does not bar a suit to vindicate constitutional rights, immunity from suit is not waived if the constitutional claims are facially invalid."[ (citations omitted))]; *see also Creedmoor–Maha Water Supply Corp.*, 307 S.W.3d at 516; *Chisholm Trail SUD Stakeholders Grp. v. Chisholm Trail Special Util. Dist.*, No. 03-16-00214-CV, 2017 WL 2062258, at *6 (Tex. App.—Austin May 11, 2017, pet. denied) (mem. op.).

*Brown v. Daniels*, No. 05-20-00579-CV, 2021 WL 1997060, at *9 (Tex. App.—Dallas May 19, 2021, no pet.) (mem. op.).

At present, the Parents' petition makes a vague reference to a violation of constitutional rights: "[The Parents] do not seek only to challenge the lawfulness of [the] District['s] actions, but they also seek a declaration of rights regarding the District's mask policy, which when implemented is depriving children of a constitutional right to education." In their brief, the Parents assert that the District's mask rule "is a violation of the constitutional right to an education provided in the least restrictive environment." However, in their request for a temporary and

permanent injunction, the Parents' allegations do not directly mention but vaguely reference a constitutional violation, though the present allegations offer more heat than light:

82. Similarly, [the Parents] seek that this [c]ourt first temporarily enjoin, and then permanently enjoin the [District], restraining it or anyone acting on its behalf, including teachers, from enforcing its mask policy.

83. Absent judicial intervention, [the Parents] face ongoing requirements impacting their education[] and have no practical ability to prevent the District from continuing to focus on ideological bullying and songs about mask-wearing that would make Joseph Goebbels proud, rather than the mundane work of education.

The Parents' challenge to the form of the District's mask policy hints as well at a possible constitutional violation. The Parents' claim is that the District's mask policy is vague and has no rational basis to stop the spread of COVID-19. What we are to make of this allegation is another matter where we are left in the dark because it is not mentioned in the Parents' brief. We do not know if this is an allegation that the policy is unconstitutionally vague or if it suffers from some other constitutional defect. *See A.M. ex rel. McAllum v. Cash*, 585 F.3d 214, 224–25 (5th Cir. 2009) (analyzing whether school dress policy was unconstitutionally vague "if it (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory enforcement"); *Gunter v. N. Wasco Cnty. Sch. Dist. Bd. of Educ.*, No. 3:21-cv-1661-YY, 2021 WL 6063672, at *6–15 (D. Or. Dec. 22, 2021) (op. and order) (analyzing challenge to school district's mask policy under federal and state constitutional

41

principles). The requirement for the Parents to state the basis for a claim that the District's mask policy violates a constitutional provision or principle is unsatisfied at present.

### D. Exhaustion of administrative remedies

The District argues that the trial court lacked jurisdiction because the Parents did not exhaust their administrative remedies. We conclude that the trial court did not err by denying the District's exhaustion challenge to the Parents' TOMA claim. Next, although at this point we do not know the form of the claims that will be made on remand, it appears that reconciling the clash of powers between the District and the Governor on the question of mandating or prohibiting the mandating of the wearing of masks is a legal question involving statutory construction for which exhaustion is not required. Also, at present, we cannot answer whether there is an exhaustion-of-remedies requirement for the Parents' vaguely stated constitutional claim. Some constitutional claims require exhaustion of administrative remedies, but some apparently do not. Until the Parents specify the type of constitutional claim that they are making, we cannot know which category it falls into.

### 1. We set forth the general principle of exhaustion of administrative remedies.

The Texas Supreme Court has set out the basic tenets of the exhaustion of administrative remedies as follows:

42

- "When the [Texas] Legislature creates an administrative agency, it may grant the agency authority to resolve disputes that arise within the agency's regulatory arena." *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 544 (Tex. 2016).

- "If the [Texas] Legislature expressly or impliedly grants an agency sole authority to make an initial determination in such disputes, the agency has exclusive jurisdiction, and a party 'must exhaust its administrative remedies before seeking recourse through judicial review.'" *Id.*

- "If the party files suit before exhausting exclusive administrative remedies, the courts lack jurisdiction and must dismiss the case." *Id.*

    **2.    We set forth the administrative structure and the exhaustion-of-remedies requirements for matters involving "school law."**

As the Texas Supreme Court has also explained, Texas operates under the following administrative scheme for public schools:

> The Texas Constitution requires the [Texas] Legislature to "establish and make suitable provision for the support and maintenance of an efficient system of public free schools." Tex. Const. art. VII, § 1. To fulfill this duty, the [Texas] Legislature has established the Texas Education Agency (TEA), the office of the Commissioner of Education, the State Board of Education (SBOE), and local school districts throughout the state. The TEA consists of the Commissioner and agency staff. Tex. Educ. Code [Ann.] § 7.002. The SBOE must fulfill its duties "with the advice and assistance of the commissioner." *Id.* § 7.102(b). School districts "have the primary responsibility for implementing the state's system of public education and ensuring student performance in accordance with [the

43

Education Code]," *id.* § 11.002, while the Commissioner serves as "the educational leader of the state," *id.* § 7.055(b)(1).

*Id.* at 545 (footnote omitted).

A provision of the Education Code directs what decision should be appealed to the Commissioner of Education as educational leader of the state:

> (a) Except as provided by Subsection (e), a person may appeal in writing to the commissioner if the person is aggrieved by:
>
>> (1) the school laws of this state; or
>>
>> (2) actions or decisions of any school district board of trustees that violate:
>>
>>> (A) the school laws of this state; or
>>>
>>> (B) a provision of a written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee.

Tex. Educ. Code Ann. § 7.057(a). Though the statute uses the term "may appeal," the supreme court has "interpreted the statute to *require* a person who *chooses* to appeal to first seek relief through the administrative process." *Marquez*, 487 S.W.3d at 545.

The body of Section 7.057 defines "school laws of this state" to mean "Title 1 and this title and rules adopted under those titles." Tex. Educ. Code Ann. § 7.057(f)(2). This verbiage means "all of the provisions of [T]itles 1 and 2 of the Education Code and the administrative rules adopted under those titles." *Marquez*, 487 S.W.3d at 546. "In short, aside from employment-contract disputes, the Education Code limits administrative appeals to cases [in which] a person is aggrieved

44

by Titles 1 or 2 of the Education Code or a school board's violation of them." *McIntyre v. El Paso Indep. Sch. Dist.*, 499 S.W.3d 820, 824 (Tex. 2016). From this limitation flows the principle that "[a]dministrative appeals are only permitted when a person is aggrieved by the school laws, a school board's violation of the school laws, or its violation of a written employment contract." *Id.* at 825. "In all other cases, a person may resort directly to the courts." *Id.* Section 7.057's exhaustion-of-remedies requirement is also subject to exceptions found both within the body of the statute and the common law; we discuss those exceptions below.

### 3. There is no exhaustion-of-remedies requirement for the Parents' TOMA claim.

To the extent that the District argues that the Parents were required to exhaust their administrative remedies before asserting their TOMA claim, the District is simply wrong.

One of the exceptions to the exhaustion-of-remedies requirement of Section 7.057 is found in the body of that section; Subsection 7.507(a–1) provides that "[a] person is not required to appeal to the commissioner before pursuing a remedy under a law outside of Title 1 or this title to which Title 1 or this title makes reference or with which Title 1 or this title requires compliance." Tex. Educ. Code Ann. § 7.057(a–1). As the Texas Supreme Court explained in *Marquez*, the Texas Legislature enacted Subsection (a–1) specifically in response to cases holding that

45

there was an exhaustion-of-remedies requirement prior to bringing a TOMA claim.

487 S.W.3d at 553–54. As the supreme court explained,

> The [Texas] Legislature enacted subpart (a–1) in response to a court of appeals' decision that required claimants to exhaust administrative remedies under the Education Code when bringing a claim against school officials for failure to comply with [TOMA]. *See* House Comm. on Pub. [Educ.], Bill Analysis, Tex. H.B. 829, 81st Leg., R.S. (2009) ("A recent court ruling interpreted the Education Code in a way that would require an individual who has a cause of action arising from the open[-]meetings laws to exhaust administrative remedies by taking his or her complaint to the commissioner prior to filing a challenge in court. [House Bill] 829 specifies that an individual with a complaint arising from a law that is referenced but not codified in Titles 1 and 2 of the Education Code is not required to first present the claim to the commissioner before pursuing a judicial remedy . . . ."); *see also Harrison v. Neeley*, 229 S.W.3d 745, 746 (Tex. App.—San Antonio 2007, pet. denied) (holding that because [T]itle 2 requires school districts to comply with [TOMA], [TOMA] was "incorporated . . . into the definition of a school law of the state" such that the Education Code's exhaustion-of-remedies requirement applied to claims under the [A]ct).

*Id.*

The supreme court went on to explain that a TOMA violation exists outside the school laws found in Titles 1 and 2 of the Education Code:

> Under [TOMA], a school district is a "governmental body," Tex. Gov't Code [Ann.] § 551.001(3)(E), and "[e]very regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter," *id.* § 551.002. [TOMA] thus imposes a duty directly on school districts, and it creates specific, independent enforcement mechanisms and remedies for violations of its mandates. *See id.* §[§] 551.141–.146. A claim for a violation of [TOMA] and remedies for such a violation thus exist "outside" of the school laws of this state, even though the school laws "reference" the [A]ct and "require[ ] compliance" with it. *See* Tex. Educ. Code [Ann.] § 7.057(a–1).

*Id.* at 554.

The District does not mention Subsection (a–1) or its impact on whether exhaustion is required for a TOMA claim, nor does the District make any effort to distinguish *Marquez*'s comments regarding that issue. As we have noted, we express no opinion on the merit of the Parents' TOMA claim (as the trial court did not predicate its injunction on that claim and reviewing the merits of the claim is premature), but that claim is not subject to the exhaustion-of-remedies requirements of Section 7.057.

4. **As presently couched by the parties, the question of the District's powers versus those of the Governor under the TDA presents a question of law for which there is no exhaustion-of-remedies requirement.**

Another core controversy in this matter is whether the District's mask policy violates GA-38. The Governor's power to issue GA-38 under the TDA presents a question of law to which we apply a de novo standard of review and to which exhaustion principles do not apply. We address it because it appears that this might be a question arising on remand. *See English v. English*, 44 S.W.3d 102, 104 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (reviewing question that may arise on remand for the sake of judicial economy).

*Marquez* addressed the exception to exhaustion principles for questions of law. As *Marquez* noted, "[g]enerally, the doctrine of exhaustion of administrative remedies does not apply when there are purely questions of law involved." 487 S.W.3d at 557. In *Marquez*, the supreme court concluded that the claim at issue did not involve a pure

question of law because the claim impacted questions of historical fact, constitutional fact, and mixed questions of law and fact. *Id.* Because of the intertwining of these factual issues in the question raised by the parents in *Marquez*, the question went beyond a pure question of law and required exhaustion of remedies.

Here, everyone speaks of the clash between the powers of the Governor under Chapter 418 of the Government Code and the powers of a school district as a legal question. Intervenor Smith describes the issue as follows:

> The [t]rial [c]ourt stated at the beginning of the temporary[-]injunction hearing that this case was really about the Governor's power to super[s]ede the policies of school districts. Smith contends that the [t]rial [c]ourt erred [by] concluding that the text of the statute granting the Governor emergency power authorized the Governor to super[s]ede the regulations of a school district. [Record reference omitted.]

In the trial court, the District in its plea to the jurisdiction posed the issue of the clashing powers of the Governor and school districts as one of statutory construction:

> The Governor can only accomplish his statewide ban on mask requirements by violating the disaster mitigation purposes of the TDA, purporting to override or suspend school districts' general statutory authority to manage activities on campus and protect the health and safety of their students. He purports to do so under the authority granted him in Section 418.016 of the TDA by "suspend[ing]" several sections of the TDA itself, entire chapters of the Texas Health and Safety Code and Government Code, and finally "[a]ny other statute invoked by any local governmental entity or official in support of a face-covering requirement." GA-38, ¶ 4(b). While the TDA allows the Governor to suspend "certain" laws and rules, this authority is subject to several specific limitations—most of which the Governor's interpretation reads out of the statute[] in contravention of the basic rules of statutory construction and interpretation.

Though not attempting to reconcile the powers of the Governor and those of school districts, other courts have analyzed the Governor's powers under Chapter 418 as a question of law involving statutory construction. *Abbott v. Harris Cnty.*, No. 03-21-00429-CV, 2022 WL 92027, at \*4 (Tex. App.—Austin Jan. 6, 2022, pet. filed) ("To the extent our review of the trial court's temporary injunction turns on statutory construction, we review these issues de novo."); *Abbott v. Jenkins*, No. 05-21-00733-CV, 2021 WL 5445813, at \*9 (Tex. App.—Dallas Nov. 22, 2021, pet. filed) (mem. op.) (analyzing powers of Governor versus county judge as one of statutory construction); *Abbott v. City of San Antonio*, No. 04-21-00342-CV, 2021 WL 5217636, at \*3 (Tex. App.—San Antonio Nov. 10, 2021, pet. filed) ("The City and County's *ultra vires* claim requires construction of the [TDA]. Statutory construction is a question of law that we review de novo."); *State v. El Paso Cnty.*, 618 S.W.3d 812, 819 (Tex. App.—El Paso 2020, orig. proceeding) ("The answer to our question lies in the text of the [TDA]. Statutory construction is a legal question that we review *de novo*.").

Again, not knowing what claims may be made on remand, the core question of the powers held by the Governor appears to present a legal question.

**5. At present, we cannot determine whether there is an exhaustion-of-remedies requirement for the Parents' constitutional claim because, at present, we do not know what that claim is.**

As we have noted, the Parents' current pleading makes an inchoate claim for a declaration that "the District's mask policy, which when implemented[,] is depriving

49

children of a constitutional right to education." We will remand this matter to the trial court to permit the Parents to at least attempt to articulate the nature of their constitutional claim. Thus, at this point, we do not know whether the Parents will amend to assert a constitutional claim, if any, and what form that might take. It is premature to decide whether the Parents must exhaust their administrative remedies before they have asserted a constitutional claim.

We will, however, briefly address what appears to be the District's argument that there is an unbending rule that would require exhaustion of remedies before filing a constitutional claim. We disagree.

The District argues that

[i]n their live pleading, [the Parents] allege [that] their children are being deprived of "a constitutional right to education." Such a claim necessarily asserts a violation of the school laws of the state because school districts have no constitutional obligation to provide education. In Article VII, [S]ection 1, the Texas Constitution requires *the Texas Legislature* to "establish and make suitable provision for the support and maintenance of an efficient system of public free schools." Tex. Const. art. VII, § 1; *Marquez*, 487 S.W.3d at 545. It places no duty on school districts. *See* Tex. Const. art. VII, § 1; *Marquez*, 487 S.W.3d at 545. School districts only have a responsibility for *implementing* the state's system of public education only because the [Texas] Legislature has — by statute — delegated authority to local school districts throughout the state. *Marquez*, 487 S.W.3d at 545 (citing Tex. Educ. Code [Ann.] § 11.002). [Record reference omitted.]

In response, we note that *Marquez* held that some constitutional claims may require exhaustion of remedies and that some may not. The supreme court gave the

following guidance in distinguishing between constitutional claims that require exhaustion of remedies and those that do not:

> Although we need not articulate all of the parameters of the so-called constitutional-claims exception to the exhaustion-of-remedies requirement in this case, we draw two principles from these cases relevant to school-law claims and with which we agree. First, when a person complains that a school board's conduct or decision violates *only* the person's state or federal constitutional rights, and the conduct or decision does not violate the school laws of the state or an employment contract, [S]ection 7.057(a) neither authorizes nor requires the Commissioner to hear the appeal. *See* Tex. Educ. Code [Ann.] § 7.057(a). Under those circumstances, no "exception" to an exhaustion requirement is needed. But if the constitutional claim is "ancillary to and supportive of a complaint about the board's handling of an employment contract or application of school law," such that the true nature of the claim, although asserted as a constitutional violation, necessarily results from a violation of school laws or an employment contract, then [S]ection 7.057(a) authorizes and requires the Commissioner to hear the appeal first, unless another exception to the exhaustion requirement applies. [*Jones v.*] *Clarksville* [*Indep. Sch. Dist.*], 46 S.W.3d [467,] 474 [(Tex. App.—Texarkana 2001, no pet.)]. In an appropriate case, the exception for federal claims asserted in federal court, which the Supreme Court recognized in *McNeese* and we acknowledged in *Cypress–Fairbanks*, represents one such exception. *See* [*Tex. Educ. Agency v.*] *Cypress–Fairbanks* [*Indep. Sch. Dist.*], 830 S.W.2d [88,] 91 n.3 [(Tex. 1992)] (citing *McNeese*[ *v. Bd. of Educ. For Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*], 373 U.S. [668,] 670–71, 83 S. Ct. 1433[, 1435 (1963)]).

*Marquez*, 487 S.W.3d at 552–53 (footnote omitted); *see also McIntyre*, 499 S.W.3d at 826 ("Nonetheless, the mere fact that [appellants'] claims 'involve' the school laws does not mean they must exhaust administrative remedies. Rather, for administrative remedies to be available, they must be aggrieved by either (1) the school laws themselves or (2) a school board's violation of the school laws.").

51

It is beyond our poor powers of prediction what constitutional claim, if any, the Parents will raise. We address the District's argument only to the extent that it argues for a prophylactic rule of exhaustion of remedies, but the rule has more subtlety that the District acknowledges.[8]

### E. We set forth the resolution of this appeal.

The trial court did not err by denying the District's plea to the jurisdiction directed at the Parents' claim for injunctive relief based on the District's alleged TOMA violation. The District makes a merits-based attack rather than a jurisdiction-based attack on that claim, and there is no exhaustion-of-remedies requirement for a TOMA claim. Again, the TOMA claim does not impact the validity of the temporary-injunction order because the trial court made clear that it was not granting injunctive relief based on the TOMA claim.

---

[8]The Parents argue that they did not need to exhaust an administrative remedy because they sought injunctive relief. The District does not respond to this argument other than to argue that the Parents have identified no irreparable harm that they will suffer from the District's mask policy and to incorporate an argument from Intervenor Smith's brief on the issue. *Marquez* noted that under some circumstances, a request for injunctive relief may obviate the need to exhaust administrative remedies. 487 S.W.3d at 555 (stating that it held in *Hous. Fed'n of Teachers, Local 2415 v. Hous. Indep. Sch. Dist.*, 730 S.W.2d 644, 646 (Tex. 1987), that "the trial court had jurisdiction to issue temporary injunctive relief before the teachers exhausted their administrative remedies because the 'Commissioner of Education is not authorized to order immediate injunctive relief' and the trial court's finding that the teachers would suffer irreparable harm in the absence of a temporary injunction was 'undisturbed' on appeal."). At this point, we are reversing the trial court's injunction and remanding this case to the trial court. As with so many of the arguments that have been presented, what the showing of irreparable harm might be on remand is unknown, assuming that the Parents formulate a viable claim.

The trial court erred by granting injunctive relief based on the Parents' UDJA claim. As best we can discern, the trial court granted injunctive relief based on the Parents' UDJA claim that the District's mask policy violated the Governor's executive order prohibiting mask mandates. That claim is not one for which the District's governmental immunity is waived. Further, the Parents could not bring a viable ultra vires claim against the District and disavowed that they were bringing such a claim against the Superintendent. At present, the Parents' petition hints at a constitutional violation but leaves unspecified the constitutional right that has been allegedly violated. As a result of the lack of clarity regarding the constitutional claim, we cannot determine whether the Parents must exhaust their administrative remedies before bringing that claim or not. The upshot is that, at present, the claim that is the apparent basis for the trial court's injunctive order is not one for which the District's immunity is waived, and the Parents have not presently pleaded another claim that is viable. Thus, we dissolve the trial court's temporary-injunction order signed September 3, 2021. *See Tex. Educ. Agency v. Acad. of Careers & Techs., Inc.*, 499 S.W.3d 130, 138 (Tex. App.—Austin 2016, no pet.) (dissolving temporary injunction when plaintiff failed to plead claims for which governmental immunity was waived).

But as we have also noted, "[i]f the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court[']s jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency[,] [then] the plaintiffs should be afforded the opportunity to amend." *Miranda*, 133

S.W.3d at 226–27. We apply this principle to remand this matter to the trial court to accord the Parents an opportunity to replead.

Because we dissolve the temporary injunction based on the District's claim of immunity, we do not reach the issues raised by the District or Intervenor Smith that challenge the Governor's powers to prohibit the District's mask policy through GA-38, the evidentiary basis for the trial court's issuance of the injunction order, or the form of the injunction order.

## IV. Conclusion

Having held that the trial court did not err by denying the District's plea to the jurisdiction directed to the Parents' TOMA claim but that the trial court erred by denying the District's plea to the jurisdiction directed to the Parents' UDJA claim, we sustain the District's first issue in part and overrule it in part. Because this issue is dispositive of the appeal, we do not reach the District's second and third issues nor those raised by Intervenor Smith. Accordingly, we remand this case to the trial court for further proceedings, and we vacate our September 13, 2021 order that reinstated the trial court's temporary-injunction order pending disposition of the District's accelerated appeal.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: March 10, 2022

54